**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Russell L. CARTER, Defendant-
Appellant.**

**No. 71-1793.**

United States Court of Appeals,
Sixth Circuit.

June 29, 1972.

Arnold Morelli, Cincinnati, Ohio, for defendant-appellant.

Robert A. Steinberg, Asst. U. S. Atty., Dayton, Ohio, for plaintiff-appellee; William W. Milligan, U. S. Atty., Dayton, Ohio, on brief.

Before WEICK and EDWARDS, Circuit Judges, and CECIL, Senior Circuit Judge.

EDWARDS, Circuit Judge.

Appellant, a former municipal judge and Ohio budget director, and now a practicing lawyer in Dayton, appeals from a jury conviction in the United States District Court for the Southern District of Ohio, Western Division, on three counts of income tax evasion. The indictment had charged that appellant wilfully attempted to evade payment of income taxes due in 1963, 1964 and 1965 by filing false and fraudulent income

---

tax returns, in violation of 26 U.S.C. § 7201 (1970). Appellant was sentenced to a total of twelve months in prison, with the sentences suspended on payment of a total of $12,000 in fines.

A summary of the government's claims in the indictment and in the evidence presented at trial follows:

|  | 1963 | 1964 | 1965 |
|---|---|---|---|
| Taxable Income Reported | $ 7,527.33 | $18,765.49 | $ 9,610.33 |

| Actual Taxable Income | 32,017.86 | 33,971.20 | 51,106.28 |
|---|---|---|---|
| Unreported Taxable Income | 24,490.55 | 15,205.71 | 41,495.95 |

The government's case was based largely upon the following computation of net worth before and after the taxable periods in question. The government claim was that appellant's beginning net worth (at the end of 1962) was $129,491.51 and at the end of the three year period concerned was $214,194.01.

Government
Exhibit No. 9

### RUSSELL L. CARTER
#### Computation of Unreported Taxable Income Based On
#### Net Worth and Personal Living Expenses

| ASSETS | 12–31 1962 | 12–31 1963 | 12–31 1964 | 12–31 1965 |
|---|---|---|---|---|
| Cash on Hand | $ 1,000.00 | $ 1,000.00 | $ 1,000.00 | $ 1,000.00 |
| Cash in Banks |  |  |  |  |
| Checking Accounts | 2,556.79 | 167.56 | 356.06 | 264.57 |
| Savings Accounts | 90,897.58 | 121,770.04 | 122,001.00 | 131,601.17 |
| Bonds—Series E | 15,000.00 | 15,000.00 | 30,000.00 | 30,000.00 |
| Stocks and Notes Receivable | 2,983.72 | 1,983.72 | 983.72 | 13,487.50 |
| Real Estate | 9,386.92 | 9,386.92 | 9,386.92 | 51,886.92 |
| Business Equipment | 5,700.00 | 5,700.00 | 5,700.00 | 5,700.00 |
| Automobiles | 9,428.49 | 4,950.00 | 6,854.70 | 8,554.70 |
| TOTAL ASSETS | $136,953.50 | $159,958.24 | $176,282.40 | $242,494.86 |
| LIABILITIES |  |  |  |  |
| Mortgages and Loans Payable | $ 402.88 | $ 49.93 | $ –0– | $ 22,260.00 |
| Allowance for Depreciation | 7,059.11 | 5,105.90 | 4,089.00 | 6,040.85 |
| TOTAL LIABILITIES | $ 7,461.99 | $ 5,155.83 | $ 4,089.00 | $ 28,300.85 |
| NET WORTH | $129,491.51 | $154,802.41 | $172,193.40 | $214,194.01 |
| Beginning Net Worth |  | (129,491.51) | (154,802.41) | (172,193.40) |
| Increase in Net Worth |  | $ 25,310.90 | $ 17,390.99 | $ 42,000.61 |
| Personal Living Expenses |  | 12,646.61 | 22,303.34 | 16,283.63 |
| Adjustments to Net Worth |  | (1,144.97) | (861.14) | (1,039.21) |
| Adjusted Gross Income |  | $ 36,182.54 | $ 38,833.19 | $ 57,245.03 |
| Deductions |  | (2,394.66) | (2,461.99) | (3,738.75) |
| Exemptions |  | (2,400.00) | (2,400.00) | (2,400.00) |
| Taxable Income Corrected |  | $ 32,017.88 | $ 33,971.20 | $ 51,106.28 |
| Taxable Income Reported |  | (7,527.33) | (18,765.49) | (9,610.33) |
| Unreported Taxable Income |  | $ 24,490.55 | $ 15,205.71 | $ 41,495.95 |

The basic dispute in this case at trial and on appeal concerns the fact that the government's beginning net worth figure allowed only $1,000 for cash on hand, whereas appellant asserts that he had $50,000–$60,000 in cash in a safety deposit box on December 31, 1962, plus approximately $10,000 on his person or in his office safe.

Appellant claims that government proofs as to the cash item in the beginning net worth should not have gone to the jury, because as a matter of law they were not sufficient to establish the

$1,000 figure employed by a "reasonable certainty." In this regard appellant relies primarily upon Holland v. United States, 348 U.S. 121, 75 S.Ct. 127, 99 L. Ed. 150 (1954), and Thomas v. Commissioner of Internal Revenue, 223 F.2d 83 (6th Cir.1955).

The *Holland* case does establish "reasonable certainty" as the criterion for judging the validity of the government's opening net worth figure.

> We agree with petitioners that an essential condition in cases of this type is the establishment, with reasonable certainty, of an opening net worth, to serve as a starting point from which to calculate future increases in the taxpayer's assets. The importance of accuracy in this figure is immediately apparent, as the correctness of the result depends entirely upon the inclusion in this sum of all assets on hand at the outset. Holland v. United States, *supra*, 348 U.S. at 132, 75 S.Ct. at 134.

It is clear to us, however, that the Supreme Court in *Holland* contemplated that the basic fact finding on this topic would normally be for the jury. Thus Justice Clark's opinion discussed the net worth method primarily in terms of a jury trial:

> While we cannot say that these pitfalls inherent in the net worth method foreclose its use, they do require the exercise of great care and restraint. The complexity of the problem is such that it cannot be met merely by the application of general rules. Cf. Universal Camera Corp. v. [National] Labor [Relations] Board, 340 U.S. 474, 489 [71 S.Ct. 456, 465, 95 L.Ed. 456]. Trial courts should approach these cases in the full realization that the taxpayer may be ensnared in a system which, though difficult for the prosecution to utilize, is equally hard for the defendant to refute. *Charges should be especially clear, including, in addition to the formal instructions, a summary of the nature of the net worth method, the assumptions on which it rests, and the inferences available both for and against the accused.* Appellate courts should review the cases, bearing constantly in mind the difficulties that arise when circumstantial evidence as to guilt is the chief weapon of a method that is itself only an approximation. Holland v. United States, *supra*, 348 U.S. at 129, 75 S.Ct. at 132. (Emphasis added.)

> Circumstantial evidence in this respect is intrinsically no different from testimonial evidence. Admittedly, circumstantial evidence may in some cases point to a wholly incorrect result. Yet this is equally true of testimonial evidence. In both instances, a jury is asked to weigh the chances that the evidence correctly points to guilt against the possibility of inaccuracy or ambiguous inference. In both, the jury must use its experience with people and events in weighing the probabilities. If the jury is convinced beyond a reasonable doubt, we can require no more. *Id* at 140, 75 S.Ct. at 137.

A review of the District Judge's charge to the jury convinces us that he followed the principles of *Holland* with both care and understanding. No objection was made to the critical portions of the charge, nor is any appellate issue presented as to them.

While no doubt there are other deficiencies which may be conceived which could appropriately be viewed by a District Judge as requiring dismissal of a prosecution for failure to establish a case for jury consideration, in *Holland*, the court's emphasis in this regard was on the responsibility of the government to investigate leads:

> While sound administration of the criminal law requires that the net worth approach—a powerful method of proving otherwise undetectable offenses—should not be denied the Government, its failure to investigate leads furnished by the taxpayer might result in serious injustice. It is, of course, not for us to prescribe investigative procedures, but it is within the

province of the courts to pass upon the sufficiency of the evidence to convict. When the Government rests its case solely on the approximations and circumstantial inferences of a net worth computation, the cogency of its proof depends upon its effective negation of reasonable explanations by the taxpayer inconsistent with guilt. Such refutation might fail when the Government does not track down relevant leads furnished by the taxpayer— leads reasonably susceptible of being checked, which, if true, would establish the taxpayer's innocence. *When the Government fails to show an investigation into the validity of such leads, the trial judge may consider them as true and the Government's case insufficient to go to the jury.* This should aid in forestalling unjust prosecutions, and have the practical advantage of eliminating the dilemma, especially serious in this type of case, of the accused's being forced by the risk of an adverse verdict to come forward to substantiate leads which he had previously furnished the Government. It is a procedure entirely consistent with the position long espoused by the Government, that its duty is *not to convict but to see that justice is done.* Holland v. United States, *supra* at 135–136, 75 S.Ct. at 135. (Emphasis added.) (Footnote omitted.)

In the *Thomas* case (Thomas v. Commissioner of Internal Revenue, 223 F. 2d 83 (6th Cir.1955)), Judge Potter Stewart[1] applied the principles of *Holland* to a civil action for refund of taxes paid under a redetermination of tax by the Commissioner. There, however, in contrast to the instant case, the Commissioner had found a cash hoard in a safety deposit box on the death of one taxpayer and the question related to when it had been accumulated. In our instant case the principal question of fact pertained to whether or not there was a cash hoard. Appellant did not supply much in the way of specific leads for the government to investigate.

Appellant's testimony attributed his net worth to legal fees and modest living expenses. Appellant's own estimates of the cash hoard varied from $32,000 to nearly $70,000. He explained his keeping this amount of cash by saying that he "liked to have currency on hand," that he was a Negro and had difficulty in getting credit, and that since the depression he had not trusted banks.

It is undisputed, however, that during all three taxable years appellant had bank savings accounts of $90,000 to $131,000. And the government proofs repeatedly demonstrated both before and after December 31, 1962, that appellant had credit available to him.

Appellant kept a Cash Receipts book and an Income and Expense book. From these he made up his income tax returns as far as gross income was concerned for the tax years at issue. He likewise kept similar records for the years 1947 to 1963, but destroyed them after this investigation began.

As to the years 1963, 1964 and 1965, the government proved that appellant received substantial income in fees paid to him which were never entered on the Cash Receipts book or the Income and Expense book for the years concerned.

Appellant's testimony indicated that between 1956 and the end of 1962 he deposited over $90,000 in savings accounts and that between 1949 and the end of 1962 he increased his cash hoard from $6,500 to approximately $70,000.

From 1949 to 1953 appellant was employed as an Assistant County Prosecutor at $4,000 to $6,000 a year, with some outside practice. From 1953 to 1959 he was in private practice, except for six months in 1953, as a municipal judge at $3,255 for that period. During these years he claimed added income from legal fees but did not furnish specifics.

Government exhibits of appellant's income tax returns showed a gross income on such returns of $16,313.94 for 1959,

---

1. Now Associate Justice of the United States Supreme Court.

$21,268.11 for 1960, $19,338.26 for 1961, and $13,945.33 for 1962.

Additionally there was strong circumstantial evidence from which the jury could properly have inferred that appellant did not have the large sum of cash in a safety deposit box in 1962 as he claimed, and several instances where the jury could have found important portions of appellant's own testimony to be incredible. All in all, we conclude that there was ample evidence to support the District Judge's denial of appellant's motion for a directed verdict.

On appeal we must, of course, give the government proofs the favorable view which the jury gave them. Glasser v. United States, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942). Viewed in this light, the evidence supports the jury verdict of guilty beyond a reasonable doubt.

Appellant's other stated issues require less discussion. This court has held that noncustodial questioning by Internal Revenue Service agents is not subject to the warning requirements of Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). United States v. Stribling, 437 F.2d 765 (6th Cir.), cert. denied, 402 U.S. 973, 91 S.Ct. 1661, 29 L.Ed.2d 137 (1971). Appellant was not in custody during any interview; and we perceive no facts here presented which tend to discredit the District Judge's decision to deny appellant's motion to suppress. There was ample testimony that appellant's conduct was voluntary. *See* United States v. Goosbey, 419 F.2d 818 (6th Cir.1970). *Cf.* Bustamonte v. Schneckloth, 448 F.2d 699 (9th Cir.1971), cert. granted, 405 U.S. 953, 92 S.Ct. 1168, 31 L.Ed.2d 230 (1972). In addition to these dispositive facts, appellant was a trained lawyer with some judicial experience.

The Supreme Court has recently held that the Sixth Amendment "speedy trial" requirement applies only after a defendant is an "accused." United States v. Marion, 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971).

Appellant's other issues point out no reversible error.

The judgment of the District Court is affirmed.