**UNITED STATES of America,
Appellee,**

v.

**John J. MARRA, Appellant.**

**No. 72–2154.**

United States Court of Appeals,
Sixth Circuit.

Argued April 9, 1973.

Decided July 24, 1973.

---

John J. Raymond, Detroit, Mich., for appellant; Carl H. Wienberg, Ramond, Fletcher & Dillon, Detroit, Mich., on brief.

Robert H. McKnight, Jr., Tax Div., Dept. of Justice, Washington, D. C., for appellee; Scott P. Crampton, Asst. Atty. Gen., Meyer Rothwacks, John P. Burke, Robert H. McKnight, Jr., Attys., Tax Div., Dept. of Justice, Washington, D. C., on brief; Ralph B. Guy, Jr., U. S. Atty., of counsel.

Before PHILLIPS, Chief Judge, LIVELY, Circuit Judge, and O'SULLIVAN, Senior Circuit Judge.

O'SULLIVAN, Senior Circuit Judge.

John J. Marra, M.D., was charged in a two-count indictment with violation of Title 26 U.S.C. § 7206(1)—making false income tax returns. Count I had to do with his return for the year 1965; Count II related to his return for the year 1966. He was convicted on Count I, and upon a jury's inability to agree a mistrial was ordered as to Count II.[1] Dr. Marra does not challenge the sufficiency of the evidence upon which he was convicted. He asks reversal of his conviction upon his claim that Honorable Fred W. Kaess, Chief Judge of the United States District Court for the Eastern District of Michigan, erred in denying two pretrial motions—one to dismiss the indictment, and the other to suppress, on Fifth Amendment grounds, whatever evidence he had furnished to agents of the Internal Revenue Service. These motions were renewed at the close of proofs in support of appellant's then motion for a directed acquittal. They were again denied and the case was submitted to the jury.

---

1. At the time of sentencing on Count I, the government attorney said, "The Government will dismiss your Count II if the conviction on Count I does stand up." Defense counsel said, "That is acceptable to us."

We affirm the denial of the pretrial motions.

### I. *Motion to Dismiss*

Count I of the Indictment charged:

"That on or about April 15, 1966, in the Eastern District of Michigan, JOHN J. MARRA, a resident of Lake Orion, Michigan, wilfully and knowingly made and subscribed a 1965 Federal Income Tax Return (IRS Form 1040), which was verified by a written declaration that it was made under the penalties of perjury, and which was filed with the District Director of Internal Revenue at Detroit, Michigan, and which tax return he did not believe to be true and correct as to every material matter: in that he reported Schedule C gross receipts of $54,742.59, interest income of $2,536.45, and Schedule C other business expenses of $16,773.07, whereas, as he then and there well knew and believed, the correct amounts he should have reported were $78,330.58, $3,168.79, and $15,955.07 respectively; in violation of Section 7206(1), Title 26, United States Code."

Count II charged:

"That on or about June 1, 1967, in the Eastern District of Michigan JOHN J. MARRA, a resident of Lake Orion, Michigan, wilfully and knowingly made and subscribed a 1966 Federal Income Tax Return (IRS Form 1040) which was verified by a written declaration that it was made under the penalties of perjury and which was filed with the District Director of Internal Revenue at Detroit, Michigan, and which tax return he did not believe to be true and correct as to every material matter: in that he reported a $12,000.00 charitable contribution based upon a real estate appraiser's report secured by false information (furnished by the defendant) when in fact he well knew and believed that the correct amount of the charitable deduction was substantially less; and in that he reported interest income of $1,396.48, well knowing and believing

the correct amount of interest income was $3,282.47; in violation of Section 7206(1), Title 26, United States Code."

Appellant's motion to dismiss contained these averments:

"1. The indictment fails to state the particular act or acts charged with reasonable definiteness so as to enable the defendant to prepare his defense, and that it is so vague, indefinite and uncertain that it does not inform the defendant of the nature or cause of the accusation made against him, and in the foregoing respects does not comply with the Fifth and Sixth Amendments to the Constitution of the United States.

"2. The indictment does not contain a plain, concise and definite written statement of the essential facts constituting the offense charged, and, therefore, does not comply with Rule 7(c) of the Federal Rules of Criminal Procedure."

"3. In Count One, the Indictment purports to allege that defendant willfully and knowingly made and subscribed a 1965 Federal income tax return which he did not believe to be true and correct as to every material matter. This merely states a conclusion rather than the essential allegations of fact which constitute the alleged offense, in that:

a. No facts are stated which allege that defendant signed a completed tax return (when in fact the Agents knew or should have known the defendant signed a blank tax return).

b. The defendant has, by affidavit attached, set forth the facts proving the signing of two blank tax return forms, an extra copy of which was part of the files shown to the Agents by the defendant's accountant, Angus Campbell (copy of said blank return attached).

"4. In Count Two, the Indictment alleges in vague and uncertain terms that the defendant furnished false information to an appraiser. This is a mere conclusion. No facts are alleged

which would constitute the elements of an alleged offense or apprise the defendant sufficiently to enable him to prepare a defense.

"Likewise in Count Two the indictment alleges that the defendant did not report all of this interest-income.

"In his attached affidavit, the defendant denies that he gave any such alleged false information to the appraisers and in substantiation thereof attaches a copy of said appraisal which states as follows:

a. That the appraisers made a careful inspection of the subject property, noted and analyzed all of the determining factors, both favorable and unfavorable, that indicate value, and then arrived at the opinion that the fair market value of the property as of January 6, 1966 was $12,000.00.

b. That the appraisers were furnished a survey of the property and the dimensions and legal description used in the appraisal were taken off this survey made on October 25, 1965 by Kieft Engineering of Clarkston, Michigan."

The factual material of Dr. Marra's affidavit supporting the motion said:

"In April 1966, while discussing my income tax matters with my accountant, Angus Campbell, he requested that I sign two blank forms 1040, Federal income tax forms, since there was not sufficient time for him to finish the return and send it to me for signature. Mrs. Marra and I signed two such blank forms and returned them to Mr. Campbell.

"After delivering the signed blank income tax forms to Mr. Campbell, I did not meet, or discuss the contents of my 1965 Federal income tax return, with Angus Campbell.

"To the best of my knowledge and belief the finished product, that is the completed 1965 Federal income tax return was mailed from the office of Mr. Campbell."

The District Judge held that the indictment was legally sufficient. His order recites:

An indictment does not have to be put in the most definite and certain terms possible. An indictment is sufficient if it (1) alleges all of the elements of the offense; (2) fairly informs the defendant of what he must be prepared to meet; (3) protects him against double jeopardy; and (4) enables the Court to determine whether the facts alleged are sufficient in law to withstand a motion to dismiss or to support a conviction. Hagner v. U. S., 285 U.S. 427 [, 52 S.Ct. 417, 76 L. Ed. 861] (1932); U. S. v. Levinson, 405 F.2d 971 (6th Cir. 1968)."

\* \* \* \* \* \*

"Thus, the Court finds that the indictment is neither vague nor indefinite. An offense is charged, and defendant is well aware of the nature of the offense and the underlying transactions which form the basis for the charge. Therefore, the indictment fully complies with all of the requirements of the Fifth and Sixth Amendments to the Constitution of the United States and Rule 7(c) of the Federal Rules of Criminal Procedure."

A reading of the indictment makes clear the correctness of the foregoing.

In dealing with the factual and defensive allegations of appellant's affidavit supporting his motion, the District Judge said:

"Paragraphs 3a., 3b., 4a., and 4b. of defendant's motion raise factual issues. A trial is the appropriate place to resolve these issues. A motion to dismiss the indictment cannot be used as a device for a summary trial of the evidence. The sole function of this type of motion is to test the sufficiency of the indictment to charge an offense. U. S. v. Sampson, 371 U.S. 75 [, 83 S.Ct. 173, 9 L.Ed.2d 136] (1962); U. S. v. Luros, 243 F.Supp. 160 (N.D.Iowa, W.D.1965); U. S. v.

Winer, 323 F.Supp. 604 (E.D.Pa. 1971). The Court should not consider evidence not appearing on the face of the indictment. *Winer, supra.*"

The District Judge's recited reasons for his ruling are so clearly correct that we need not support them with our own dissertation.

At trial, Dr. Marra's accountant testified that on the evening of April 14th he had already prepared a pencil draft of the proposed return and went over it with Dr. Marra who either approved it or did not question its accuracy. The accountant or his secretary typed in all of the material from the pencil draft onto the 1040 return already signed by the doctor and his wife. This was sent in to the Internal Revenue Department as appellant's tax return for 1965.

Appellant does not question the sufficiency of this evidence to warrant his conviction under Count I, and we mention it only as supporting the propriety of the District Judge's refusal to consider Dr. Marra's *ex parte* affidavit in denying the motion to dismiss.

*II. Motion to suppress.*

Appellant's brief to us, as a statement of issue presented, says:

"1. Whether the lower court erred in denying the Defendant's motion to suppress evidence when the facts upon which the decision was based clearly established that the Defendant had been misled by the Revenue Agent into believing that a civil audit only was being conducted."

The basic charges of his Motion to Suppress were:

"1. During the period from on or about February 19, 1968 through April, 1969, statements and admissions were extracted from defendant and certain books, records and papers, of which he is the owner and are more specifically hereinafter set forth, were unlawfully obtained from him by Agents of the Internal Revenue Service.

"2. The statements obtained concerned matters relating to defendant's sources of income and deductions during the indictment period and the books, records and papers obtained from him or his accountants consisted of:

a. bank and brokerage records, copies of canceled checks, paid invoices or receipts, and the like relating to the periods of 1965 and 1966.

b. other miscellaneous records, which records were the personal records of the defendant.

"3. The foregoing statements and property were obtained without a search warrant, and in derogation of defendant's rights under the Fourth and Fifth Amendments of the United States Constitution, in that, such statements and property *were obtained by deceit and misrepresentation, both active and passive,* to the effect that the nature of the investigation was that of a routine civil audit. (Emphasis supplied.)

"4. Defendant proffers himself for the taking of testimony in support of this motion, and solely for that purpose, such testimony not to be a waiver of his right not to incriminate himself or of any other right or privilege."

An affidavit by Dr. Marra, supporting his Motion to Suppress, recited:

"2. In the latter part of 1967 and the first two months of 1968, Revenue Agent Bruce Norvell was conducting an audit of my 1965 and 1966 tax returns and, for the most part, obtained relevant information from my accountant, Edward Derbabian, C.P.A.

"3. I was informed by my accountant at several points in time during this period that the Agent was requesting certain information, and I supplied whatever I had available to my accountant which I believed he would submit to the Revenue Agent.

"4. In the latter part of February, 1968, I was made aware through my accountant that the Revenue Agent

had submitted a list of proposed adjustments, these being items which I understood he was disagreeing with and planning to change.

"5. As a result of this turn of events, I believed that the Agent was in the process of closing the case and that there was no cause for concern that a criminal investigation was taking place or would take place.

"6. When I received the two letters from the Internal Revenue Agent in July of 1968, I was completely convinced that no criminal investigation would ensue, because the wording in these letters gave me the impression that the Agent was finally closing the case.

"7. As a result of the foregoing, *I was wrongfully deceived, falsely misled by misrepresentation, both active and passive, and surreptitiously induced* to give statements and provide documents and records in contravention of my rights under the Fourth, Fifth and Sixth Amendments of the Constitution." (Emphasis supplied.)

In addition to the Motion to Suppress and Dr. Marra's supporting affidavit, his counsel filed a pleading denominated Memorandum in Support of Motion to Suppress and Return Seized Property. With this, he filed various exhibits, A to H. Except for two letters, discussed below, these exhibits contained the revenue agent's requests for information needed for the audit then being conducted; also some memoranda made by appellant's accountant. When advised that an audit was being made of his 1965 and 1966 tax returns, Dr. Marra referred the agent to his accountant. These inquiries carried titles such as "Items Requested Re Audit of Federal Income Tax Returns of John J. and Dorothy M. Marra," "Dr. Marra Pending," "Proposed Changes," and "Items Requested re Audit of Federal Income Tax Returns of Clinical Laboratories, Incorporated." Dr. Marra was the sole shareholder of the mentioned corporation. As did the District Judge, we find nothing in these exhibits that would excite a belief upon the part of Dr. Marra or his accountant that criminal prosecution might not ultimately be the product of the civil division's audit; neither do we find any indicia of fraud and deceit. Exhibits G and H were letters to Marra dated respectively July 10 and July 18, 1968, from Norvell, the Internal Revenue Agent conducting the audit. The letter of July 10 asked for certain information, and concluded:

"I am meeting with Mr. Derbabian [Marra's accountant] July 17, 1968. Completion of the audit will be expedited if you could provide him with the above information by that date."

The letter of July 18 told Marra that the agent and Derbabian had scheduled an appointment for July 24 to discuss the returns of Clinical Laboratories, Inc. It advised that Marra's accountant had compiled a list of items necessary to evaluation of tax liabilities reflected on the 1965, 1966 returns of the mentioned corporation. The letter concluded:

"If you can assist Mr. Derbabian [Marra's accountant] in obtaining for our appointment July 24, 1968, the items he has listed then the audit may be completed in the very near future."

We again emphasize that there is nothing to indicate, nor was there any evidence introduced at trial that the then examining agent was entertaining a plan to refer the matter to the Intelligence Division to consider possible criminal conduct by Dr. Marra. The letter was not calculated to justify a belief that such investigation might not be later initiated; neither is there reason for a belief that the agent's expressed hope that the furnishing of the requested items might lead to completion of the audit "in the near future" was not entertained in good faith. We find nothing in the foregoing to sustain appellant's claim that thereby Dr. Marra,

" \* \* \* was wrongfully deceived, falsely misled by misrepresentation, both active and passive, and surreptitiously induced to give statements and

provide documents and records in contravention of [Marra's] rights under the Fourth, Fifth and Sixth Amendments of the Constitution."

Another document filed in support of the motion to suppress was an affidavit of an attorney, Charles A. Dean, who identified himself as having been counsel for Dr. Marra during part of the investigation of the questioned tax returns. This affidavit recited:

"3. That on or about March 31, 1969, I wrote to Special Agent Lance Conrad, enclosing a copy of a Power of Attorney, and inquired as to the status of the subject matter.

"4. That on or about April 1, 1969, Special Agent Conrad called me and, in response to my inquiry, stated that the entire matter did not appear serious and that he was merely attempting to resolve a few items still being questioned on the defendant's 1965 and 1966 tax returns.

"5. That on or about April 3, 1969, Special Agent Conrad called me. He stated that he would like to talk to the defendant. I again asked him what the purpose was, and whether there was any reason for me to be present. Mr. Conrad replied in words to the effect that he wanted to ask the defendant a few routine questions so that he could finally conclude the matter. At no time did Special Agent Conrad indicate, by word or otherwise, that the defendant was under investigation for criminal fraud. That, in reliance upon his clear intimation that no criminal action was contemplated, I consented to his interviewing the defendant out of my presence."

The dates set out were *after* this matter had been referred to the Intelligence Division of the Revenue Department. The attorney knew this and was aware that inquiries by a Special Agent of the Intelligence Division had to do with an investigation for possible criminal conduct by his client. Neither in the Motion to Suppress nor in attorney Dean's affidavit was there a showing that the confer-

ence between Dr. Marra and Special Agent Conrad did in fact take place. There was nothing to show that, if it did, the government obtained any information used to support the charges made against Dr. Marra. Of controlling importance is the clear concession by Dr. Marra's counsel, made at the hearing on the Motion to Suppress, that upon the Special Agent's initial interview with him, Dr. Marra was given all of the so-called *Miranda* warnings. There was no showing to negative that these warnings were not repeated at each interview thereafter.

We are not persuaded that the affidavit of attorney Dean, the affidavit of Dr. Marra, and the Exhibits attached to the motion to suppress required the District Judge to hold a pretrial evidentiary hearing before ruling on the motion. In denying the motion, the District Judge said:

"Therefore, in view of all these considerations, the Court finds there were no acts of fraud or deception of affirmative matters practiced by either of the agents on the defendant and that the incriminatory evidence was divulged [by] the defendant voluntarily, well knowing all the consequences of his acts, therefore, the motion to suppress is denied."

While appellant's claim of error here deals only with the denial of his *pretrial* motion, such motion was renewed and denied at the close of proofs. At trial, Agent Conrad, referred to in the affidavit of attorney Dean, testified that upon his first meeting with Marra, he gave him the full *Miranda* warnings and repeated them at any subsequent meeting. Dr. Marra's affidavit supporting his pretrial motion did not negate such fact; neither did he testify at his trial. Testimony at trial or the lack of it cannot be controlling of the issue before us; we mention it only to emphasize the shortcomings of the pretrial motion.

We are satisfied, as was the District Judge, that the agent Norvell's requests for information from Marra's account-

ant and his expressed hope that the audit might be expeditiously concluded, cannot be read as masking a vicious plan to invade Dr. Marra's constitutional rights. The fraud, deceit and trickery charged reside only in the conclusional assertions of Dr. Marra and his attorney. It should be mentioned that Norvell, who was conducting the audit for the civil division, had no direct conversations with Dr. Marra. As requested by Dr. Marra, Norvell's dealings were with the doctor's accountant and the charged fraud and deceit had to come, if at all, second hand from the accountant's reports of his dealing with Norvell.

Without extended discussion, we set out the controlling law as to what must be shown to warrant a finding that a taxpayer has been tricked or deceived by government agents into providing incriminating evidence to such agents. In United States v. Prudden, 424 F.2d 1021 (5th Cir. 1970), the rule is given:

> "[T]he mere failure of a revenue agent (be he regular or special) to warn the taxpayer that the investigation may result in criminal charges, absent any acts by the agent which materially misrepresent the nature of the inquiry, do not constitute fraud, deceit and trickery. Therefore, the record here must disclose some affirmative misrepresentation to establish the existence of fraud, *and this showing must be clear and convincing.*" 424 F.2d at 1033. (Emphasis supplied.)

Such rule was stated again in United States v. Tonahill, 430 F.2d 1042, 1044 (5th Cir. 1970). In our decision in United States v. Stribling, 437 F.2d 765, 772 (6th Cir. 1971), we expressed our agreement with the above quoted rule in *Prudden, supra,* and quoted with approval the following from United States v. Squeri, 398 F.2d 785, 788 (2d Cir. 1968):

> " * * * [T]he information that a taxpayer's returns are under audit gives sufficient notice of the possibility of criminal prosecution regardless

of whether the agents contemplate civil or criminal action when they speak to him."

The language of Judge Lumbard, speaking for the Second Circuit in United States v. Sclafani, 265 F.2d 408 (2d Cir. 1959), fits nicely the situation here.

> "A 'routine' tax investigation openly commenced as such is devoid of stealth or deceit because the ordinary taxpayer surely knows that there is inherent in it a warning that the government's agents will pursue evidence of misreporting without regard to the shadowy line between avoidance and evasion, mistake and willful omission.

> \* \* \* \* \* \*

> "Moreover, it is unrealistic to suggest that the government could or should keep a taxpayer advised as to the direction in which its necessarily fluctuating investigations lead. The burden on the government would be impossible to discharge in fact, and would serve no useful purpose." 265 F.2d at 414, 415.

We are satisfied that the presentations by affidavit and exhibits to support the pretrial motion to suppress lacked the necessary "solidity" to require a District Judge to conduct an evidentiary hearing. See United States v. Giglio, 16 F.R.D. 268, 270 (S.D.N.Y. 1954), affirmed, United States v. Giglio, 232 F.2d 589 (2d Cir. 1956), affirmed, sub nom, Lawn v. United States, 355 U.S. 339, 347, 78 S.Ct. 311, 2 L.Ed.2d 321 (1958). Neither did the subjective conclusions of Dr. Marra add up to the "clear and convincing showing" required by *Prudden, supra.*

Although not suggested at the hearing on the Motion to Suppress, appellant urges upon us that the manner in which agent Norvell conducted the audit violated a provision of the Audit Technique Handbook for Internal Revenue Agents, which, in part, advises that such agents:

> "[S]hould not say anything that could be construed as an offer of immunity or as a step toward a settlement of the case upon a civil basis."

■ Aside from our doubt that such advice to revenue agents constitutes a definition of the rights of a taxpayer—see United States v. Lockyer, 448 F.2d 417, 421 (10th Cir. 1971)—we do not consider that it overrules the law requiring a "solid" and "clear and convincing" showing that the taxpayer was the victim of fraud and deceit employed by involved government agents.

Judgment affirmed.