UNITED STATES of America,
Plaintiff-Appellee,

v.

James L. ALLEN, Defendant-Appellant.

No. 74–1959.

United States Court of Appeals,
Sixth Circuit.

Sept. 2, 1975.
Certiorari Denied Jan. 19, 1976.
See 96 S.Ct. 854.

James L. Allen, pro se.

Frederick M. Coleman, U. S. Atty., Cleveland, Ohio, Robert E. Lindsay, Charles E. Brookhart, Scott P. Crampton, Asst. Atty. Gen., Tax Div., Dept. of Justice, Washington, D. C., for plaintiff-appellee.

Before WEICK, McCREE and MILLER, Circuit Judges.

WEICK, Circuit Judge.

Allen has appealed from his judgment of conviction entered upon a jury verdict of guilty on two counts of an indictment charging him with willfully attempting to evade income taxes for the years 1967 and 1968 in violation of 26 U.S.C. § 7201. He was sentenced to two, five year concurrent terms of imprisonment, the first six months of which were to be served in a jail-type institution and he was placed

on probation for the balance of the sentence. He was fined $2,500 on each count or a total of $5,000. Count I of his indictment was dismissed.

Although he was represented in the District Court by two retained trial lawyers, his brief in this court, as well as his oral argument, were *pro se.*

At the trial, the government used the net worth and expenditures' method of proof. Its evidence tended to prove that although Allen and his wife, in joint income tax returns, reported a taxable income of $11,225.56 for 1967 and $16,-580.79 for 1968, their net worth increased $18,402.37 during 1967 and an additional $35,436.96 during 1968. The Allens' actual taxable income was computed to be $26,415.68 for 1967 and $44,-036.54 for 1968. A technical adjustment, adjusting the 1968 income $10,000 downward to $34,036.54, was made to allow for an error discovered in one of the adding machine tapes used in preparation of the 1968 return. This adjustment allowed in full the deduction claimed by Allen in his original return.

Allen had been employed, prior to 1967, by various magazine circulating companies supervising the activities of magazine salesmen.

Late in 1966 Allen started his own business, calling it National Organization Sales. He was a subfranchisee under a regional franchisee in the magazine subscription sales business. He acted as a clearinghouse for salesmen and others, who were independent contractors, and processed subscriptions to various publishers.

Revenue Agent Tracy described Mr. Allen's business:

> Mr. Allen explained to me that most of his sales were through a sponsor, and these sponsors usually consisted of VFW posts or volunteer fire departments or organizations similar to these.
>
> The sales campaign would be in a given locale, where they would advertise a sales campaign and explain that they were benefiting the sponsor, and

the sponsor would take the proceeds they made, the profits, and use this money either for their organization or to buy hospital equipment. And he explained to me that the hospital equipment was free for public use and this was part of the campaign, to build up good will and so forth. This was publicized and the people that were sold subscriptions hopefully were aware of this fact, which would induce their sales.

> The sponsoring organization would receive 8 percent of the gross sales for the campaign.

Allen admits that the volume of his business in 1967 totalled $596,087.30 and $711,988.14 for the year 1968.

National Organization Sales was operated primarily out of an office in the basement of the Allen home. During the years in question, the business records were kept in a single entry system, which Revenue Agent Tracy, who was assigned to perform a field audit of the taxpayers described as "unique." Tracy testified:

> To summarize my opinion, in areas where I felt he should have records he didn't have records; in other areas I felt he had too many records.

It was not possible to make an accurate accounting of all of Allen's income.

The Allens' tax returns for 1967 and 1968, and for many years prior to that time, were prepared by Hubert Howes, an attorney, and his wife, Shirley Howes, a certified public accountant. The returns were prepared primarily on the basis of information furnished by Allen. Mrs. Howes testified that in January, 1968 Allen discussed with her the advisability of setting up a bookkeeping system. Mrs. Howes finally set up such a system in 1970 for Allen. One of the theories of the case presented to the jury by the defense in argument was that Allen simply was inadequate to the task of starting and running his own business and keeping the records for that business. In other words, the defense argued that if some income was not re-

ported, it was the result of the inadequate records, and not the result of a willful attempt to evade income taxes. The defense also attacked the accuracy of the government's opening and closing net worth figures.

Much of the prosecution's evidence concerning willfulness was presented through the testimony of Internal Revenue Agent, James Tracy.

Agent Tracy testified concerning his audit of the returns and investigation of the Allens' income. Tracy was assigned to conduct a field audit of the Allens' 1967 return on November 14, 1969. He visited the office in the basement of the Allen home many times from December 11, 1969 through April 15, 1970. He decided to audit both 1967 and 1968 income tax returns.

Tracy's testimony was important in establishing the accuracy of the net worth computations. He also testified that Allen at first denied and, later in the investigation, admitted receiving reimbursement for expenses from the Veterans of Foreign Wars for which expenses he had taken deductions in his returns.

During 1967 and 1968, Allen served as junior vice commander, senior vice commander and commander of the Ohio Veterans of Foreign Wars. Such payments by the Veterans of Foreign Wars could have been a source of unreported income and the initial denial of such payments was strong evidence of willfulness. Tracy also testified that Allen denied making a profit on hospital equipment which sponsoring organizations order in lieu of receiving cash for sponsoring a sales campaign. Other evidence in the case tended to show that Allen did make a profit on the sale of such equipment. Again, the profit could be a source of unreported income and the denial would be evidence of willfulness in the evasion of income tax.

I

Allen contends that the District Judge committed prejudicial error in denying his motion for continuance which was sought because of the illness of one of his attorneys, Edward Lebit. The motion asserted that Mr. Lebit, a former employee of the Internal Revenue Service, was primarily responsible for the accounting and tax aspects of the case and was to testify as an expert for the defense and to serve as co-counsel. The motion further recited that it would be a month before Mr. Lebit would be well enough to even have business visitors. Trial counsel wished to discuss the case with Mr. Lebit before deciding whether to employ substitute counsel. The motion did not indicate how much of a continuance would be necessary.

The government opposed the motion on the grounds that trial counsel, Robert J. Rotatori, had been connected with the case since March 20, 1973, which was over ten months prior to the filing of the motion for continuance; that the defense possessed the government's tentative net worth schedule and almost all documents which would be introduced at trial; that the case had previously been continued several times at Allen's request, and that there was no showing why attorneys associated with Mr. Lebit, who also were former employees of the Internal Revenue Service, would be unavailable to replace him in the fifteen days remaining before trial.

Mr. Rotatori was present for the status call of the case on March 20, 1973 and signed the motion and order for discovery. He represented Allen at the hearing on the motion to suppress. He had sought and obtained several continuances. The case had been assigned for trial on a standby basis on May 1, 1973 but the trial did not commence until February 25, 1974. The record discloses that Allen's defense was ably conducted by Mr. Rotatori.

In addition, Allen was represented at the trial by Edward Kleinman who served as associate counsel. Mr. Kleinman was a former employee of the Internal Revenue Service and had assisted Mr. Lebit during various pretrial matters. He was familiar with the case and

was available to assist Mr. Rotatori on any technical matters.

The grant or denial of a continuance is within the sound discretion of the trial judge and will be disturbed on appeal only where there has been a clear abuse of discretion. *United States v. Ploeger*, 428 F.2d 1204 (6th Cir. 1970). In our opinion, there was no abuse of discretion in the denial of the motion under the circumstances as presented to the trial judge. *Giacalone v. Lucas*, 445 F.2d 1238 (6th Cir. 1971), *cert. denied* 405 U.S. 922, 92 S.Ct. 960, 30 L.Ed.2d 793 (1972).

## II

Allen further contends that the District Court erred in denying his motion to suppress statements made by him to representatives of the Internal Revenue Service, and for return of all documents obtained from him or his accountant. He claims that he was entitled to the *Miranda* warnings. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The Allens were not in custody and the *Miranda* warnings, in our opinion, were not required. *United States v. Carter*, 462 F.2d 1252 (6th Cir. 1972), *cert. denied* 409 U.S. 984, 93 S.Ct. 324, 34 L.Ed.2d 248; *United States v. Stribling*, 437 F.2d 765, 771 (6th Cir. 1971), *cert. denied* 402 U.S. 973, 91 S.Ct. 1661, 29 L.Ed.2d 137.

In the absence of a clear showing that the taxpayer has been tricked or deceived by the government agents into providing incriminating information, the documents and statements obtained by the Internal Revenue agents are admissible *United States v. Marra*, 481 F.2d 1196, 1203 (6th Cir. 1973), *cert. denied* 414 U.S. 1004, 94 S.Ct. 361, 38 L.Ed.2d 240. The District Court's factual findings that there was no such showing are supported by substantial evidence and are not clearly erroneous.

## III

Allen's next contention is that the District Court erred in permitting Internal Revenue agents to testify, over objection, that they investigated certain accounts receivable "leads" furnished to the government by Allen and that they were unable to verify the amounts set out on the accounts receivable list.

Since Allen computed his income by the accrual method, accounts receivable in existence prior to the opening net worth date would constitute a possible source of non-taxable income with respect to the tax years in question. The government is required to investigate leads reasonably susceptible of being checked concerning possible sources of non-taxable income. *Holland v. United States*, 348 U.S. 121, 135–136, 75 S.Ct. 127, 99 L.Ed. 150 (1954).

The defense objection was made on the theory that the testimony was hearsay. An agent's testimony that he was unable to verify the account receivable amount allegedly due from a named person as the result of his investigation is not hearsay. The agent is simply stating the result of his investigation. He is not recounting the out-of-court statement of the person who allegedly owes the account. The agent must testify concerning his inability to verify the amount if he is to negate the possible source of non-taxable income, or, in other words, the validity of the "lead."

## IV

Allen further contends that the District Court erred in allowing the prosecution to impeach one of its witnesses, Daniel Pagnotta, by the use of his prior inconsistent statements. This court has already rejected "as unsound and illogical the rule that prohibits a party from impeaching a witness whom he calls." *United States v. Bryant*, 461 F.2d 912, 918 (6th Cir. 1972).

Allen also contends that the government's expert summary witness, Adele Kihlken, improperly commented upon the credibility of Mr. Pagnotta's testimony. The statement complained of was made in answer to a question by

defense counsel as to why Mr. Pagnotta's testimony was not reflected in the accounts receivable figures. The witness explained that she had to accept one figure or another for her summary. She further explained that she understood Mr. Pagnotta's testimony to be that he made payments to Allen during the period in question, but yet the amount of his debt to Allen remained the same. Trial counsel brought out in further cross-examination that Mrs. Kihlken's understanding of Mr. Pagnotta's testimony may have been wrong. It is important to note, however, that on redirect examination Mrs. Kihlken testified concerning the effect including the payments testified to by Mr. Pagnotta would have on the net worth summary. All of the facts were before the jury for the jury's resolution. We find no error in this contention.

### V

 We find no error in the court's failing to record the testimony of Special Agent Pope before the Grand Jury. *United States v. Battisti*, 486 F.2d 961 (6th Cir. 1973).

 The court did not err in admitting the summary prepared by the government's expert witness as it was based on facts established by evidence in the record. *United States v. Bartone*, 400 F.2d 459 (6th Cir. 1968), *cert. denied* 393 U.S. 1027, 89 S.Ct. 631, 21 L.Ed.2d 571 (1969).

### VI

During IRS Agent Tracy's direct testimony, the defense moved the court for an order requiring the government to produce his Referral Report, which is the form used for referring the case to the Intelligence Division and his Revenue Agent's Report. The defense did not ask for the production of Special Agent Pope's criminal Reference Report. It was the claim of the defense that both these Reports of Agent Tracy were statements required to be produced under the Jencks Act, 18 U.S.C. § 3500.

Attached to the Referral Report were six schedules containing net worth computations which were the basis for the Report. The District Court ordered the government to produce the schedules but not the Report itself which he concluded was merely an inter-departmental communication and not producible. Thus, with the exception of the two page Report itself and one preliminary computation which did not relate to Agent Tracy's testimony, the defense was given everything in the Report. The court also ruled that the Revenue Agent's Report was not producible. The Report consisted merely of net worth schedules of use in computing Allen's income tax liability for civil purposes. It is dated a year after the date of the Referral Report. Both Reports were sealed and transmitted to this court.

The defense offered in evidence the schedules attached to Agent Tracy's Referral Report and a few other exhibits and then rested at the close of the government's case in chief without offering any evidence except the schedules and other exhibits.

There was extensive cross-examination of Agent Tracy concerning his net worth computations and also of Adele Kihlken, the government's expert who testified concerning the summary which she prepared. As previously stated, the defense did not even move for the production of Special Agent Pope's Criminal Reference Report.

 It is our opinion that even though the entire reports could have been considered producible under the Jencks Act, the failure to order production was harmless error. *United States v. Ball*, 428 F.2d 26 (6th Cir. 1970).

### VII

 The government was not required to prove the exact amount of Allen's income for the tax years in question. It was required to prove beyond a reasonable doubt that Allen's tax returns

contained a substantial understatement of income for the years in question and that the understatement was willful for the purpose of attempting to evade the payment of his income taxes. *United States v. Johnson*, 319 U.S. 503, 63 S.Ct. 1233, 87 L.Ed. 1546 (1943).

The jury could take into account that by his own admission the volume of Allen's business for 1967 was $596,087.30 and $711,988.14 for the year 1968; that with this large volume of business for the two years in question, Allen did not keep adequate records so that the amount of his income could be accurately ascertained; that he took deductions for expenses on his income tax returns notwithstanding the fact that he had received reimbursement for the expenses from VFW and that he did not report profits he made on the sale of hospital equipment to his sponsors.

We also note Allen's claim that he was not adequately represented by counsel at his trial which the record shows is without merit.

We are of the opinion that the jury's verdict is supported by substantial evidence and that no prejudicial error intervened.

Allen has submitted as an appendage to his brief, two volumes of material not contained in the record. The record cannot be enlarged in this manner and we cannot consider the material. *United States v. Collins*, 349 F.2d 296, 298 (6th Cir. 1965); *United States v. Young*, 301 F.2d 298 (6th Cir. 1962). We have considered other alleged errors claimed in Allen's brief which in our opinion have no merit and do not need to be discussed.

Affirmed.