**UNITED STATES of America**

v.

**William P. MITLO.**

**Crim. No. 82–45.**

United States District Court,
W.D. Pennsylvania.

Feb. 24, 1983.

fact in a matter within the jurisdiction of the Department of Health and Human Services, an agency of the United States, in that in PA–259 Forms (Standard Medical Invoices) submitted to the Commonwealth of Pennsylvania, Department of Public Welfare, 123 Walnut Street, Harrisburg, Pennsylvania, William P. Mitlo stated and caused to be stated, that 204 routine office visits were provided to Ronald J. McAllen from February 1977 to December, 1978, whereas in truth and fact, as the defendant then well knew, substantially less than 104 routine office visits were provided."

Defendant has filed various pre-trial motions which have been ruled on previously, however, presently pending before this Court is a Motion to Suppress two recorded telephone conversations and one face-to-face conversation between Defendant Mitlo and one Ronald McAllen. Hearing on the Motion to Suppress was held June 21, 1982, and argument on that motion was held November 12, 1982. Following receipt of the transcripts, briefs, and other pertinent information, the Court now issues its Opinion, granting Defendant Mitlo's Motion to Suppress.

Stephen I. Goldring, U.S. Atty., Pittsburgh, Pa., for plaintiff.

William F. Manifesto, Pittsburgh, Pa., for defendant.

## OPINION

SIMMONS, District Judge.

### I.  Procedural History

Defendant William P. Mitlo, a doctor of chiropractics licensed to practice in Pennsylvania, is charged in a nine count indictment with violating Title 18, United States Code, Sections 1341 and 1001, by making false and fraudulent statements with respect to Medicaid claims and with mail fraud in the use of the mails to implement and execute a scheme and artifice to defraud. In particular, Count 4 of the indictment charges that the Defendant, William P. Mitlo, "willfully and knowingly did make, and caused to be made, false, fictitious and fraudulent statements and representations as to material

### II.  Findings of Fact

For purposes of this Motion to Suppress, the Court makes the following findings of fact.

On or about March 7, 1980, agents of the Inspector General's Office of the Department of Health, Education and Welfare were advised by the Pennsylvania State Police that a former medical secretary of Dr. William P. Mitlo wished to speak with them about possible violations of Medicaid regulations by Defendant William Mitlo. As a result of this information, HEW agents met with and interviewed the former medical secretary.

On April 8, 1980, Agents Daniel Sherry of the United States Health and Human Services Department (formerly Health, Education and Welfare Department), and William Johnson of the United States Postal Department went to Defendant Mitlo's office

with a Grand Jury Subpoena for Mitlo's medical records and attempted to interrogate Defendant Mitlo and to secure certain records of Defendant Mitlo. Defendant Mitlo advised the agents that he would not answer questions or deliver documents until he spoke with his attorney, and in the presence of the agents Mitlo did contact his attorney. Agent Sherry telephonically spoke with Defendant Mitlo's attorney, who told the agents that the Defendant would not provide any information to them. Agent Sherry advised the attorney that he would serve the Defendant with a Federal Grand Jury Subpoena for an April 10, 1980 appearance, which was accomplished. Defendant Mitlo acted on the advice of his counsel and invoked his Fifth and Sixth Amendment rights by refusing to deliver any records or talk to the agents, and by indicating that he wished to have his counsel present. Mitlo's attorney later advised the United States Attorney that if Mitlo appeared before the Grand Jury he would invoke his Fifth Amendment rights, and the United States Attorney instructed Mitlo's attorney that Mitlo's appearance would not be necessary in those circumstances.

The agents continued their investigation by interviewing present and former patients of Mitlo to determine whether the patients made all of the visits for which Mitlo billed the Medicaid program.

In June, 1980, the agents contacted Ronald McAllen, a patient of Dr. Mitlo, and his wife, concerning Defendant Mitlo's treatment of Mr. McAllen and their son, and McAllen met with Agent Sherry in New Castle, Pennsylvania on June 19, 1980. At that time McAllen said that the bills appeared to be accurate with respect to him, McAllen, but that McAllen's son did not visit Defendant Mitlo as many times as the records indicated. McAllen told the agents that he spoke with Defendant Mitlo by phone a few weeks prior to that interview in New Castle, and Mitlo wanted McAllen to contact him, apparently in regard to making arrangements to be interviewed by Mitlo's attorney or investigators, with respect to Mitlo's billing procedures.

A few days later McAllen had another meeting with the agents in New Castle, and McAllen was asked by the agents to make calls to Defendant Mitlo, which they would record, and to get Mitlo to talk about the treatment of McAllen's son because the Defendant, Dr. Mitlo, would not talk to the agents. McAllen agreed, and on June 24, 1980, McAllen had two telephone conversations and one face-to-face meeting with Mitlo, all of which the government recorded. On these occasions, McAllen became an operative for the Government.

McAllen placed two phone calls, in the presence of the agents, to Defendant Mitlo on June 24, 1980 at 11:06 AM and 12:09 PM, which were recorded by Agents Johnson and Sherry. At the time of the calls and the face-to-face conversation, the Government agents knew that Defendant Mitlo, acting on the advice of counsel, had earlier declined to make any statements to the agents or produce any records, and knew that Mitlo had earlier invoked the protection of the Fifth Amendment. Nevertheless, the agents solicited the assistance of McAllen and directed McAllen's actions whereby McAllen made the phone calls to arrange a meeting in Mitlo's office. McAllen repeatedly assured Mitlo during the phone conversations that the agents had informed McAllen that Mitlo's phone was not being tapped.

The face-to-face meeting with Mitlo at his office took place at 5:24 PM on June 24, 1980, and was recorded by a body microphone placed on the person of Ronald McAllen who was then acting as an operative for the government. McAllen intentionally and in a deceptive manner brought about the conversations with Mitlo for the purpose of obtaining incriminating information which Mitlo, after consulting with his counsel and after invoking his right to remain silent, had previously refused to provide directly to the Government.

### III. Discussion

Defendant Mitlo contends that he invoked his Fifth Amendment rights, but that the government, acting through operative

Ronald McAllen, continued to interrogate Mitlo in an effort to elicit incriminating statements from him, in violation of his constitutional rights. Defendant further contends that at the time of the June 24, 1980 conversations, Defendant Mitlo was the target of an investigation, and any attempted interrogation by the Government required that Defendant Mitlo receive his Miranda warnings, which was not done. (*Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)).

In *United States v. Allen,* 522 F.2d 1229 (6th Cir.1975), *cert. denied,* 423 U.S. 1072, 96 S.Ct. 854, 47 L.Ed.2d 82 (1976), Defendant was convicted of willful evasion of income tax and sought to attack the district court's denial of his motion to suppress statements made by him to representatives of the Internal Revenue Service. Allen further claimed that he was entitled to the benefit of the *Miranda* warnings. Although the *Allen* court declined to suppress the statements, it stated the applicable law:

In the absence of a clear showing that the taxpayer has been tricked or deceived by the government agents into providing incriminating information, the documents and statements obtained by the Internal Revenue agents are admissible, *United States v. Marra,* 481 F.2d 1196, 1203 (6th Cir.1973), *cert. denied,* 414 U.S. 1004, 94 S.Ct. 361, 38 L.Ed.2d 240. The District Court's factual findings that there was no such showing are supported by substantial evidence and are not clearly erroneous.

522 F.2d at 1233.

Likewise, in *United States v. Marra,* 481 F.2d 1196 (6th Cir.1973), *cert. denied,* 414 U.S. 1004, 94 S.Ct. 361, 38 L.Ed.2d 240, Defendant was convicted of making false income tax returns. In *Marra,* the Defendant claimed that statements and property "were obtained by deceit and misrepresentation, both active and passive, to the effect that the nature of the investigation was that of a routine civil audit." 481 F.2d at 1200. The United States Court of Appeals for the Sixth Circuit agreed with the District Court that there were no acts of fraud or deception of affirmative matters practiced by either of the Internal Revenue Service Agents, and that the incriminatory evidence was divulged voluntarily by the Defendant who knew all of the consequences of his act:

We are satisfied, as was the District Judge, that the agent Norvell's requests for information from Marra's accountant and his expressed hope that the audit might be expeditiously concluded, cannot be read as masking a vicious plan to invade Dr. Marra's constitutional rights. The fraud, deceit, and trickery charged reside only in the conclusional assertions of Dr. Marra and his attorney. It should be mentioned that Norvell, who was conducting the audit for the civil division, had no direct conversations with Dr. Marra. As requested by Dr. Marra, Norvell's dealings were with the doctor's accountant and the charged fraud and deceit had to come, if at all, second hand from the accountant's reports of his dealing with Norvell.

481 F.2d at 1196.

The *Marra* Court found that the record failed to disclose any clear and convincing evidence of some affirmative misrepresentation to establish the existence of fraud. The mere failure of a revenue agent to warn the taxpayer that the investigation may result in criminal charges, absent any affirmative misrepresentation of the nature of the inquiry, was not sufficient to constitute fraud, deceit and trickery.

The factual situation presented in the instant case is clearly distinguishable from both *Marra* and *Allen.* In both of those cases the Defendants contended that they were misled by the agents as to the nature of the investigation, and the Courts held that the record did not disclose a factual basis for the finding that the agents used trickery or deceit in obtaining the incriminating information. Here, however, the identity of McAllen as a government operative was concealed from the Defendant, who had no knowledge that his conversations with McAllen were being recorded by the government. When a citizen is dealing

**524**

with a known agent of the Internal Revenue Service in a routine tax investigation, there is no element of deceit or stealth involved because the ordinary taxpayer knows and expects that the government will pursue all evidence of misreporting. This is not the situation presented in the instant case. Here, because Defendant Mitlo was unaware of McAllen's identity as a government operative, he did not expect that incriminating evidence against him would be pursued. Unlike *Marra* and *Allen,* at the time he made the incriminating statements, Defendant Mitlo was unaware that McAllen was actually acting for the government, and the government deliberately sent McAllen to Defendant Mitlo in the guise of a genuine inquiring patient, hoping that McAllen would be able to trick or deceive Mitlo into making the incriminating statements that Defendant Mitlo had previously rightfully refused to provide to the government agents. Defendant Mitlo was repeatedly deceived by the Government, by the actions of its operative, McAllen, both as to the identity of McAllen as a government operative, and in the nature of McAllen's visit to Mitlo, which was arranged for the sole purpose of fraudulently eliciting incriminating statements from Defendant Mitlo about his past conduct with regard to Medicaid claims, even though Mitlo previously and unambiguously informed the Government of his intention to invoke his Fifth and Sixth Amendment rights.

The controlling law requires that we suppress these incriminating statements of the Defendant upon the factual finding in this case, based on clear and convincing evidence that this Defendant had been tricked and/or deceived by the affirmative misrepresentations of the government, acting through McAllen as its agent, which trickery and/or deceit caused the Defendant to unwittingly provide incriminating information to the Government against Defendant's will. This Court, as the finder of fact, has so found clear and convincing evidence of the aforementioned affirmative misrepresentations by the Government which were acted upon by the Defendant to his legal detriment. All of the incriminating state-

ments made by Defendant Mitlo to the government operative, Ronald McAllen, on June 24, 1980, must therefore be suppressed. An appropriate Order will be entered.