**ZAMLOCH v. UNITED STATES.**

No. 12753.

United States Court of Appeals
Ninth Circuit.

Jan. 14, 1952.

Rehearing Denied Feb. 7, 1952.

See also, 187 F.2d 854.

Leo R. Friedman, San Francisco, Cal., for appellant.

Chauncey Tramutolo, U. S. Atty., Joseph Karesh, Asst. U. S. Atty., San Francisco, Cal., for appellee.

Before HEALY, ORR and POPE, Circuit Judges.

ORR, Circuit Judge.

In April 1949 one Marie Basom was charged with having concealed and facilitated the concealment of a certain lot of heroin on April 15, 1949. After trial she was found guilty. Appellant Zamloch represented her as attorney at the trial.

Subsequent to the trial and conviction of Marie Basom, appellant, together with one Steffen and one Benevedes, was charged in the first count of an indictment of two counts, with the crime of conspiracy to defraud the United States of its lawful powers in the due administration of justice by procuring the said Marie Basom to testify falsely, by procuring her to refrain from further testifying, and conspiring to conceal and suppress from officers of the United States information that Steffen and Benevedes were principals, with Marie Basom, in the ownership, control and concealment of the narcotics for the concealment of which Marie Basom was previously convicted; and was charged with the same defendants, in the second count of the indictment, with having given Marie Basom money, and a promise and agreement therefor, upon an agreement and understanding that her testimony was in fact and should be influenced to the end that she, as a witness in her case, should not disclose or testify that Hugh Basom, Steffen and Benevedes were principals in her case. Steffen and Benevedes plead guilty. Marie Basom and Hugh Basom, while alleged to be members of the conspiracy, were not indicted.

Appellant's specification of errors relates, in most part, to the admission of evidence and instructions given the jury.

I. During the course of the trial the Court admitted in evidence a wire recording of a conversation held on April 25, 1950, between Hugh Basom and Albert Benevedes. Its introduction was objected to upon the ground that the proffered evidence was not the statements of alleged coconspirators in furtherance of the conspiracy but was merely a narrative of past events.

The wire recording purports to detail a conversation between coconspirators Hugh

Basom and Benevedes. It was taken pursuant to a plan agreed upon by Colonel George H. White, then District Supervisor of the Bureau of Narcotics, and Hugh Basom.

The purpose of arranging to get the wire recording, as stated by White, was "that the whole history of the case would be reviewed during the conversation from the lips of Benevedes" and as stated by Hugh Basom, its purpose "was to get Benevedes to give the full narrative of all that had taken place in the past." Appellant takes some comfort from these statements of purpose as sustaining his contention that the conversation is but a narrative of past events. The conversation must be judged on what was said and in it we find very definite statements of a determination to further the conspiracy.

Marie Basom, at her trial, testified that a man named Carl had given her the narcotics found in her possession. The facts were that she had received the narcotics from Hugh Basom who in turn had received them from Steffen with the aid and connivance of Benevedes. The conspiracy charged was the endeavor of appellant, Steffen, Benevedes, and Hugh Basom, to seal the lips of Marie Basom so that she would not disclose the participation of the main culprits, Steffen and Benevedes. Steffen had paid $4,500 for this purpose. The money was handled by Zamloch, who retained $500 as a commission. It was essential to the interests of the conspirators that Marie Basom remain silent at least until the statute of limitations ran. The reasons for preventing Marie Basom from talking were as strong and compelling at the time the conversation was had between Basom and Benevedes as it was the day it was entered into. In the course of the conversation Benevedes exhibited changing moods and attitudes in relation to the alleged threat conveyed to him by Hugh Basom of Marie Basom to *talk*. The plan agreed upon by the narcotics agents and Hugh Basom was for Basom to represent to Benevedes that a woman (fictitious) had conveyed a message from Marie Basom to Hugh Basom to the effect that she, Marie Basom, was threatening to go to the United States attorney and tell *all*. At first, Benevedes used braggadocio; next, he pictured the extremes to which Steffen would go to dispose of an informer, relating that one informer was no longer around and, in direct terms, he, Benevedes, threatened that if Marie Basom, by carrying information to the officers, caused him to be imprisoned he would kill the s.o.b. himself. Rather a forceful way and one, which he no doubt considered an effective way, to cause Marie Basom to continue to remain silent. True, some of the recorded conversation was concerned with past acts but it seems such a result was inevitable because the conspirators would necessarily discuss the conspiracy in stating terms which would most probably insure its effective continuance. While we entertain no doubt as to the correctness of the trial court's ruling in admitting the recording yet, if we be wrong in our conclusion, we cannot subscribe to the dire effects on the minds of the jury which appellant ascribes to it. Surely it is disgusting and revolting for a jury to be required to listen to language such as was used, but the jury doubtless formed, from observations they were in a position to make, an opinion of the character and depravity of the individuals concerned in the dope racket and that it, the jury, would not expect from them too much in the way of refinement of speech. Also, the jury would know from its observation, that Zamloch was incapable of the use of such disgusting language and to say they would be so inflamed by the language used by others as to be unable to fairly weigh the evidence as to him seems rather overdrawn. The admission in evidence of the wire recording was not error.

 II. Complaint is made that the Court erred in instructing the jury as to the evidentiary value of the wire recording. The exception taken in the trial court followed the contention that the recording was confined to statements of past events. We have rejected that contention in our treatment of the question of the admissibility of the evidence. The admissibility was a question of law for the Court. It correctly ruled that the evidence was admissible. The jury was then permitted to

consider it in connection with all the evidence in the case. That the conversation contained statements in furtherance of the conspiracy had been determined by the Court; that function was thus withdrawn from the jury: its task was to determine the weight and credibility. United States v. Nardone, 2 Cir., 127 F.2d 521; Wigmore, § 2550. Further, no request was made by appellant to have included in the instruction the matter now urged as essential and, under Rule 30 of the Rules of Criminal Procedure, 18 U.S.C.A. in order to have considered an assignment of error in the failure to give a specific instruction a request that it be given must first be made to the Court.

■ III. Appellant next assigns as error the admission into evidence of a certain mortgage from Paul and Ida Steffen to James Martin MacInnis.

The theory upon which the mortgage was admitted, insofar as we are able to determine from the remarks of the trial court, was that the mortgage was relevant to the extent that it shed some light upon the relations of Zamloch, as a member of a law firm, and its (the firm's) relations with their client Steffen. The evidence then before the trial court seems to have convinced it that Zamloch could reasonably be charged with knowledge of the execution of the mortgage. The size of the mortgage was evidence of how valuable the client Steffen was to the firm. Zamloch undoubtedly would be anxious that the firm secure a client able to pay such a large fee. Hence, with that thought in mind, he would have been all the more willing to further the conspiracy to protect Steffen. The $2,000 fee for defending Marie Basom he had earned. A motive must have existed for Zamloch to enter into the hazardous business of obstructing justice. The gaining and retention of a client capable of paying large fees could have been the inducement. The mortgage was relevant in this respect. Its weight was for the jury. The matter of the admission of evidence rests in the sound discretion of the trial court and we are unable to say that it abused its discretion in admitting the mortgage; further, we see no prejudice to appellant resulting from such admission.

IV. The admission into evidence of a mortgage from Paul and Ida Steffen to Richard M. Siegel, an associate of the firm of Hallinan, MacInnis and Zamloch, is assigned as error.

What we have said in relation to the admission of the mortgage from Steffen to MacInnis has equal application here. Again, the district court concluded that Siegel's connection with the firm was such as to bring notice of this mortgage to Zamloch. This evidence would have value and relevancy as shedding light upon Zamloch's motive in entering the conspiracy, an additional circumstance indicating that Steffen was the sort of client worth going to great lengths to protect.

■ V. Appellant urges that the Court erred in admitting in evidence the portion of the testimony of Hugh Basom relating to a conversation between Basom and Mr. and Mrs. Benevedes in August of 1949.

This proffered evidence was objected to on the ground that it called for a narrative of past events. The conversation was an attempt on the part of Benevedes to bring Hugh Basom, a co-conspirator, down to date on the effectiveness of the conspiracy. He, Hugh Basom, had been absent for some time at sea. Benevedes knew Hugh had influence with Marie Basom. She was threatening to get out of hand. He was requested to see Zamloch who informed him of the $4,000 which had been paid to purchase Marie's silence and arrangements were made for its disposition. There is no question in our minds but that the conversations had were for the purpose of insuring the continuance of the conspiracy to induce Marie Basom to remain silent. It was designed to move a co-conspirator, absent for some time, to resume active cooperation as such.

VI. It is urged that the Court erred in instructing the jury as to the use that could be made of the mortgages from the Steffens to MacInnis and Siegel.

This instruction in essence merely stated to the jury their right and duty to give the mortgage evidence such weight as they deemed proper. That such is the right and duty of the jury is not disputed.

VII. It is contended that the jury's verdict of guilty was coerced by a supplementary instruction given by the trial court.

This assignment was made at a time when the record failed to state the entire contents of the instruction complained of. The record has since been corrected and discloses that the instruction given conforms to one approved by the United States Supreme Court in the case of Allen v. United States, 164 U.S. 492, 501, 17 S.Ct. 154, 41 L.Ed. 528.

■ VIII. Appellant maintains that the evidence was insufficient as a matter of law to establish the charge of conspiracy, and asserts that the conspiracy, and defendant's connection therewith, must be established by proof aliunde the acts and declarations of a co-conspirator and cites Glasser v. United States, 315 U.S. 60, 74, 62 S.Ct. 457, 86 L.Ed. 680, in support thereof. Appellant urges that neither the conspiracy charged nor a defendant's connection therewith can be established by testimony of the acts and declarations of a co-conspirator done and said out of the defendant's presence. Even so, that is not this case. We give much more significance to the testimony of witnesses Marie Basom, Hugh Basom, appellant Zamloch, and Werlhof than does appellant. We find the evidence amply sufficient to support the verdict. For example: As has been stated, Marie Basom told the officers that she had received the key to the locker in which the narcotics were stored from a man named Carl, the fact of the matter being, as she later testified, that she received the key from Hugh Basom who, in turn, had received it from Steffen. Marie Basom further testified that prior to her trial Zamloch had knowledge as to the true facts but that he, Zamloch, advised her to stick to the false story when testifying in court. After Marie Basom was convicted she testified that Zamloch visited her and at that time informed her that he had $4,000 for "my being convicted." And, "I didn't know

what to do with it. I couldn't take $4,000 to Alderson with me, so he said he would hold it for me for ten per cent;" that Zamloch retained possession of the money and later sent her a cashier's check for $3,600.

Zamloch testified that he received the money from Benevedes; that he, Zamloch, had been informed by Hugh Basom that the money had been paid Marie Basom for taking the "rap", and knowing this, he, Zamloch, had sent the $3,600 to Marie Basom.

Hugh Basom testified that in a conversation between him and Zamloch, he, Basom, threatened to tell all the facts to the officers and that Zamloch warned him that to do so would result in the murder of Hugh and Marie.

Witness Werlhof testified that Zamloch told him that the "idiot Benevedes" had "opened up" and convicted himself which made it look very bad for him, Zamloch, and that it did look bad for him.

■ IX. It is said that the Court erred in instructing the jury that the case of United States against Marie Basom was still pending.

We are unable to attach any significance to this assignment. Appellant argues that the case against Marie Basom had terminated and that much testimony was given by Hugh Basom, Marie Basom, Siegel, Werlhof, and the narcotics agents as to conversations and events taking place long after the Marie Basom case had ceased to be pending. Appellant has urged objections to the admissibility of evidence. The validity of the objections in some respects was concerned with the pendency of the action against Marie Basom. We have decided these questions. The instruction complained of is said to be erroneous only insofar as it stated that the action against Marie Basom was still pending at the time of trial. No prejudicial effect insofar as we can determine has resulted. None has been pointed out.

Appellant argues that the indictment failed to state an offense under 18 U.S.C.A. § 1503, the obstruction of justice statute, because a violation of § 1503 can occur

only when there has been an interference with the operation of the functions of federal courts. Subdivision (C) of the indictment, which is the part of the indictment under attack, alleges in part that the defendants conspired to obstruct justice "by corruptly endeavoring to influence, obstruct and impede the due administration of justice in that the said defendants and said co-conspirators well knew and were informed that after the return of the said verdict of guilty in the said case the United States attorney for the Northern District of California and his assistants and the Federal Bureau of Narcotics and its duly authorized agents did continue to investigate and attempt to prosecute the offenses involved in said case to the end and with the purpose that an indictment he brought against those persons, in addition to the said Marie Basom, whoever they might be, known to have owned, controlled and concealed the narcotics which were the subject of the said case, in that the said defendants and co-conspirators having knowledge of all of the facts hereinabove alleged did endeavor to corruptly influence, obstruct and impede the due administration of justice by corruptly and by threat and by force concealing the fact and suppressing the knowledge that the defendants Paul Steffen and Albert Benevedes were in truth and in fact principals with the said Marie Basom in the ownership and control and concealment of the heroin which was the subject of said case hereinabove referred to."

Section 1503, in express terms, applies to anyone who " * * * corruptly * * * endeavors to influence, obstruct, or impede, the due administration of justice". Surely a conspiracy to induce a person to withhold information from officers charged with the administration of the law is impeding and obstructing the administration of justice, and, if done for the payment of a price, it is corruptly done. We find no merit in this contention.

This was rather a long trial resulting in a record of substantial length. An unbiased reading of this record leaves us with the conviction that this appellant was afforded a fair and impartial trial and that the verdict of guilty finds ample support in the evidence and applicable law.

It appeals to us as being a case where the provisions of Rule 52(a) of the Rules of Criminal Procedure have significant application. Painstaking counsel, after a careful examination of the record, has been able to point to some claimed error, some defect, and some irregularity or variance occurring during the trial. We are convinced that such claimed error, defect, irregularity or variance, as may exist, did not affect the substantial rights of appellant, and that "guilt has been found by a jury according to the procedure and standards appropriate for * * * trials in the federal courts." Bollenbach v. United States, 326 U.S. 607, 614, 66 S.Ct. 402, 406, 90 L.Ed. 350.

Judgment affirmed.