UNITED STATES of America, Appellant

v.

MITLO, William P.

No. 83–5217.

United States Court of Appeals,
Third Circuit.

Submitted Under Third Circuit Rule 12(6)
Aug. 11, 1983.

Decided Aug. 19, 1983.

As Amended Sept. 1, 1983.

Certiorari Denied Dec. 12, 1983.
See 104 S.Ct. 550.

J. Alan Johnson, U.S. Atty., Paul J. Brysh, Asst. U.S. Atty., Pittsburgh, Pa., for appellant.

William F. Manifesto, Manifesto & Doherty, P.C., Pittsburgh, Pa., for appellee.

Before ALDISERT and WEIS, Circuit Judges, and RE, Chief Judge.*

## OPINION OF THE COURT

ALDISERT, Circuit Judge.

The question for decision in this appeal by the government is whether the district court erred in suppressing the use of three recorded conversations. Although the government recorded the conversations with the permission of one of the participants, the district court barred their use because it found that they had been obtained by trick and deception in disregard of the defendant's constitutional rights. Notwithstanding the court's findings of fact, we hold that the evidence should not have been suppressed. We reverse.

### I.

Appellee William Mitlo is a chiropractor with offices in New Castle, Pennsylvania. On a tip from his former secretary, agents of the Postal Service and the Department of Health and Human Services visited Mitlo to discuss alleged Medicaid fraud. Mitlo telephoned his lawyer who advised him not to talk to the agents and who also told the agents that Mitlo would not provide any information to them. On advice of counsel, Mitlo invoked fifth and sixth amendment rights, indicated that he wished to have counsel present, refused to deliver records, and refused to talk further with the agents. Two months later the government agents spoke to Ronald McAllen, one of Mitlo's patients, who, according to Medicaid records, made 204 office visits to the chiroprac-

tor. McAllen reported to the investigators that the number of his visits was accurate but that Mitlo apparently had overreported the number of visits McAllen's son had made. McAllen later testified that he was worried that the investigation would result in loss of his welfare benefits and agreed to permit the government agents to record his future conversations with Mitlo. App. at 93a, 101a.

The government recorded three McAllen-Mitlo conversations. The first two were telephone conversations, initiated by McAllen, recorded by government agents at McAllen's end of the connection. In the first of these, Mitlo repeatedly urged McAllen not to say anything over the phone, but McAllen told Mitlo that he had been informed by the agents that Mitlo's phone was not tapped. App. at 154a–168a. In a second, shorter, recorded conversation, McAllen agreed to meet with Mitlo at the chiropractor's office. The agents then wired McAllen for sound by equipping him with a wireless microphone. McAllen met with Mitlo in Mitlo's office, and government agents recorded this face-to-face conversation. At the suppression hearing, McAllen testified that the agents had not specifically instructed him on what to say to or ask of Mitlo. Id. at 104a–05a.

Some two years later Mitlo was indicted on four counts of Medicaid fraud, 18 U.S.C. § 1001, and five counts of mail fraud, 18 U.S.C. § 1341. He moved to suppress the recordings of the two telephone conversations and the conversation conducted in his office. The district judge granted the motion because:

Defendant Mitlo was repeatedly deceived by the Government, by the actions of its operative, McAllen, both as to the identity of McAllen as a government operative, and in the nature of McAllen's visit to Mitlo, which was arranged for the sole purpose of fraudulently eliciting incriminating statements from Defendant Mitlo about his past conduct with regard to

---

* Honorable Edward D. Re, Chief Judge of the United States Court of International Trade, sitting by designation.

Medicaid claims, even though Mitlo previously and unambiguously informed the Government of his intention to invoke his Fifth and Sixth Amendment rights. *United States v. Mitlo,* 557 F.Supp. 520, 524 (W.D.Pa.1983). The government filed a timely appeal. We have jurisdiction under 18 U.S.C. § 3731.

## II.

The government argues that, notwithstanding the court's finding of trickery, monitoring the conversations was not violative of Mitlo's constitutional rights, that the defendant had no sixth amendment right to the assistance of counsel because no "critical stage" of the proceeding had been entered, that he had not been arrested, had not been taken into custody, and had not been indicted.

█ The district court found that McAllen intentionally deceived Mitlo into talking. This finding is entitled to considerable deference. McAllen's testimony and the transcripts of the conversations support this finding. On review the district court's findings of narrative or historical facts are measured by the clearly erroneous test; as to the legal component of its conclusion, however, this court has plenary review. *United States v. Camiel,* 689 F.2d 31, 37 (3d Cir.1982). *See also Universal Minerals, Inc. v. C.A. Hughes & Co.,* 669 F.2d 98, 103 (3d Cir.1981).

## III.

█ Settled interpretations of the fourth amendment furnish direction for the resolution of this appeal. The amendment does not protect a party to a conversation who reposes a trust or confidence in an undisclosed government agent or informant. *Hoffa v. United States,* 385 U.S. 293, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966). The Supreme Court has stated, "Neither this Court nor any member of it has ever expressed the view that the Fourth Amendment protects a wrongdoer's misplaced belief that a person to whom he voluntarily confides his wrongdoing will not reveal it." *Id.* at 302, 87 S.Ct. at 413. For the undis-

closed agent to simultaneously record the conversation with an electronic recording device on his person is no violation of the fourth amendment, *Lopez v. United States,* 373 U.S. 427, 438–39, 83 S.Ct. 1381, 1387–1388, 10 L.Ed.2d 462 (1963), nor is it unconstitutional to transmit the conversation electronically to a remote place where it is overheard and recorded. *United States v. White,* 401 U.S. 745, 751, 91 S.Ct. 1122, 1126, 28 L.Ed.2d 453 (1971) (plurality opinion); *On Lee v. United States,* 343 U.S. 747, 753–54, 72 S.Ct. 967, 971–72, 96 L.Ed. 1270 (1952). Where one party to the conversation consents to the electronic monitoring, the conversation is admissible. *Rathbun v. United States,* 355 U.S. 107, 78 S.Ct. 161, 2 L.Ed.2d 134 (1957).

█ Settled interpretations of the fifth and sixth amendments also provide guidance. Where a person is under investigation and in custody, he must be advised of his right to counsel. *Beckwith v. United States,* 425 U.S. 341, 347, 96 S.Ct. 1612, 1616, 48 L.Ed.2d 1 (1976). One is not entitled to the protection simply because an investigation has focused upon him; the test is whether there is custodial interrogation. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). We have recently stated, "Under controlling law, *Miranda* warnings are required only when a person has been deprived of his freedom of action in some significant way." *United States v. Semkiw,* 712 F.2d 891, 893 (3d Cir.1983). The sixth amendment affords the right of counsel in all criminal prosecutions. This right attaches "[a]t or after the initiation of adversary judicial criminal proceedings—whether by way of formal charge, preliminary hearing, indictment, information, or arraignment." *Kirby v. Illinois,* 406 U.S. 682, 689, 92 S.Ct. 1877, 1882, 32 L.Ed.2d 411 (1972); *see also Massiah v. United States,* 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964). It also attaches at any "critical" stage of the prosecution. *Simmons v. United States,* 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968); *United States v. Wade,* 388 U.S. 218, 224–25, 87 S.Ct. 1926, 1930–31, 18 L.Ed.2d 1149

(1967); *Gilbert v. California,* 388 U.S. 263, 267, 87 S.Ct. 1951, 1953–54, 18 L.Ed.2d 1178 (1967). The Court has delineated certain "critical stages." *See Brewer v. Williams,* 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977) (post-arraignment questions); *Coleman v. Alabama,* 399 U.S. 1, 90 S.Ct. 1999, 26 L.Ed.2d 387 (1970) (preliminary hearing); *United States v. Wade,* 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967) (post-indictment line-up); *Massiah v. United States,* 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964) (post-indictment questioning).

Thus, use against defendants of uncounseled statements made to undercover agents prior to arrest, indictment, or other initiation of charges was held to be proper in *Hoffa v. United States,* but use of such statements made after arrest or indictment is improper. *United States v. Henry,* 447 U.S. 264, 100 S.Ct. 2183, 65 L.Ed.2d 115 (1980); *Massiah v. United States,* 377 U.S. at 206, 84 S.Ct. at 1203. As we recently emphasized, "[I]t is clear from the Supreme Court's statements that the Sixth Amendment right to counsel, as enunciated in *Massiah* and *Henry,* does not extend to the pre-indictment period." *United States v. Ammar,* 714 F.2d 238, 261 (3d Cir. 1983).

### IV.

█ With these principles in mind we proceed to analyze the contentions before us. Preliminarily, we observe that *United States v. Morrison,* 602 F.2d 529 (3d Cir. 1979), *rev'd on other grounds,* 449 U.S. 361, 101 S.Ct. 665, 66 L.Ed.2d 564 (1981), relied on by Mitlo, does not undercut orthodox sixth amendment law. Our holding was simply a spinoff of the *Massiah* doctrine that the defendant's right to counsel ripens after the indictment is returned. In *Morrison* the government knew that on May 31, 1978, Mrs. Morrison was represented by counsel. She was indicted on June 28, 1978. Yet two months later, on August 23, 1978, narcotics agents visited her home and questioned her with neither the knowledge nor

the permission of her counsel. We reversed her conviction. In the case at bar, however, even though the government agents knew that Mitlo was represented by counsel, the recorded conversations took place almost two years before indictment and arrest and well before Mitlo was deprived of his freedom in any way. These circumstances did not constitute a critical stage in the proceedings.

The district court clearly erred when it concluded that Mitlo was entitled to *Miranda* protection because he was the target of an investigation. 557 F.Supp. at 523. *Miranda* created a presumption of coercion when a statement is obtained through interrogation initiated by the authorities after the defendant "has been taken into custody or otherwise deprived of his freedom in any significant way." 384 U.S. at 444, 86 S.Ct. at 1612. Misreading *Miranda,* the district court apparently relied on the "focus-of-investigation" theory suggested in *Escobedo v. Illinois,* 378 U.S. 478, 490–92, 84 S.Ct. 1758, 1764–66 (1964). But as Judge Hunter, writing for us in *Steigler v. Anderson,* 496 F.2d 793 (3d Cir.), *cert. denied,* 419 U.S. 1002, 95 S.Ct. 320, 42 L.Ed.2d 277 (1974), emphasized:

This Court and other circuits have held that *Miranda* abandoned the "focus" theory in favor of the more objective test of whether the "government has in some meaningful way imposed restraint on [a person's] freedom of action." In the absence of such restraint there simply does not exist the inherent pressures which *Miranda* warnings were intended to neutralize.

*Id.* at 798 (footnotes omitted) (quoting *United States v. Jaskiewicz,* 433 F.2d 415, 419 (3d Cir.1970)). We therefore hold that the district court committed reversible error when it concluded both that Mitlo had a right to counsel at the time of his conversations with McAllen and that the government recordings were illegal and suppressible under *Miranda.*

### V.

█ We now turn to the district court's theory that a statement should be sup-

pressed if the declarant has been tricked or deceived by government agents into providing incriminating information. The court relied on isolated statements from two Sixth Circuit cases involving income tax prosecutions, *United States v. Allen,* 522 F.2d 1229 (6th Cir.1975), *cert. denied,* 423 U.S. 1072, 96 S.Ct. 854, 47 L.Ed.2d 82 (1976), and *United States v. Marra,* 481 F.2d 1196 (6th Cir.), *cert. denied,* 414 U.S. 1004, 94 S.Ct. 361, 38 L.Ed.2d 240 (1973). In both cases the court sustained the admissibility of the statements, but by way of *dictum* suggested that if a trick or deception had been proved the statements might have been suppressed. Here, the trial court found that "based on clear and convincing evidence that this Defendant had been tricked and/or deceived by the affirmative misrepresentations of the Government, acting through McAllen as its agent, which trickery and/or deceit caused the Defendant to unwittingly provide incriminating information to the Government against Defendant's will." 557 F.Supp. at 524.

We will accept the findings of fact set forth in this statement as not clearly erroneous. But a legal proposition that these findings warrant suppression runs counter to *Hoffa v. United States* and its progeny. The Supreme Court made clear in *United States v. White,* 401 U.S. 745, 91 S.Ct. 1122, 28 L.Ed.2d 453 (1971), that the Constitution was not offended by consensual monitoring and recording by means of a transmitter concealed on an informant's person, even though the defendant did not know he was speaking with a government agent. The Court has also stated: "The risk of being overheard by an eavesdropper or betrayed by an informer or deceived as to the identity of one with whom one deals is probably inherent in the conditions of human society. It is the kind of risk we necessarily assume whenever we speak." *Hoffa v. United States,* 385 U.S. at 303, 87 S.Ct. at 414 (quoting *Lopez v. United States,* 373 U.S. 427, 465, 83 S.Ct. 1381, 1402, 10 L.Ed.2d 462 (1963) (Brennan, J., dissenting)). It has also declared that "in the detection of many types of crime, the Government is entitled to use decoys and to conceal the identity of its agents." *Lewis v. United States,* 385 U.S. 206, 209, 87 S.Ct. 424, 426, 17 L.Ed.2d 312 (1966).

The district court in this case had the inclination to suppress the conversations for the reasons set forth in its solicitous opinion, but it lacked authority to do so. Certain principles of the common law tradition, as distinguished from the Continental civil law tradition, bind both the district courts and the courts of appeals in the federal judicial hierarchy. Central to this tradition is *stare decisis,* a doctrine we summarized in *Allegheny General Hospital v. NLRB,* 608 F.2d 965 (3d Cir.1979). There we emphasized that precedents set by higher courts are conclusive on courts lower in the judicial hierarchy "and leave to the latter no scope for independent judgment or discretion." *Id.* at 970 (quoting H.C. Black, Law of Judicial Precedents 10 (1912)). Especially relevant to this case was our indirect reference to the Supreme Court: the judgments of the highest court in any jurisdiction are binding on all other courts when they deal with matters committed to the peculiar or exclusive jurisdiction of the court making the precedent. Moreover, a decision by this court, not overruled by the Supreme Court is a decision of the court of last resort of this federal judicial circuit and is therefore "binding on all inferior courts and litigants in the Third Judicial Circuit...." *Id.* at 970.

The order of the district court suppressing the recorded statements will be reversed and the cause remanded for further proceedings in accordance with the foregoing.