**UNITED STATES of America, Plaintiff,**

v.

**James David "Dave" OSTICCO, Defendant.**

**Crim. No. 82–00149–01.**

United States District Court, M.D. Pennsylvania.

Feb. 7, 1984.

See also D.C., 568 F.Supp. 119.

Eric Holder, Jr., U.S. Dept. of Justice, Washington, D.C., for plaintiff.

Charles Gelso, Wilkes Barre, Pa., John Rogers Carroll, Carroll & Carroll, Philadelphia, Pa., for defendant.

## MEMORANDUM

CALDWELL, District Judge.

### I. Introduction

Before the court for disposition are the post-trial motions filed by defendant Osticco following his conviction by a jury in a trial held on August 17–24, 1983. The issues raised are sufficiency of the evidence, the propriety of the jury charge with regard to acts occurring after March 7, 1980, the unavailability of Charles Cortese as a witness for purposes of trial, the admissibility of certain tapes of Cortese-Parlopiano conversations, and suppression of electronic surveillance. At sentencing on December 16, 1983, defendant's counsel also presented argument on the propriety of the consecutive sentences imposed.

### II. Sufficiency of the Evidence

■ With regard to the sufficiency of the evidence contentions raised by defendant, we note initially that the applicable test is whether "viewing the evidence in the light most favorable to the Government, together with all reasonable inferences to be drawn therefrom, substantial evidence supports the jury's verdict." *United States v. Sturm*, 671 F.2d 749 (3d Cir. 1982), *cert. denied*, 459 U.S. 842, 103 S.Ct. 95, 74 L.Ed.2d 86. The case against the defendant was based largely upon the testimony and credibility of Frank Parlopiano, also known as Frank Parr. Parr, who was serving for the government, had frequent contact with Osticco and more or less became his confidant concerning the subject matter of this proceeding. Parr also became Osticco's contact with Cortese concerning their mutual concern over a grand jury investigation. Certain conversations between Parr and the defendant and between Parr and Cortese were recorded, and others were recounted by Parr in his testimony. Viewing the recordings and Parr's testimony in a light favorable to the prosecution the jury could have concluded the following scenario.

Frank Parlopiano met defendant Osticco in 1975 through a mutual acquaintance, Russell Bufalino. Parlopiano met Charles Cortese during the summer of 1979 when Cortese visited the newspaper where Parlopiano and Cortese's fiancee were employed. Cortese at that time told Parlopiano that he was the former husband of the holdout juror in the flood fraud trial. On the same occasion, Cortese indicated that Parlopiano should "ask Dave [Osticco] about me." (N.T., vol. I, 19). Frank Parlopiano was subsequently contacted in August, 1979, by FBI special agent Francis Mulholland, at

which time Parlopiano agreed to report back to the FBI on conversations he had with defendant Osticco and with Charles Cortese. Commencing in April of 1980, after he had been subjected to a body search by Osticco at Medico Industries, Parr agreed to help record these conversations and actually began to participate in such taping on May 13, 1980. During the course of his contacts, both recorded and unrecorded, Parlopiano was able to learn about jury tampering in a 1977 federal criminal trial in which Cortese's ex-wife was the lone holdout juror for acquittal, and for whose actions as a juror Cortese received both money and property.

In about December of 1979, Parlopiano learned that Cortese had been subpoenaed to testify before a federal grand jury that was investigating the jury tampering. Upon Parr's informing Osticco, Osticco said he would pay Cortese's legal expenses. Subsequently, Osticco told Parlopiano that Cortese must lie to keep himself and others out of trouble but later told Parlopiano to tell Cortese to take the fifth amendment and "keep his mouth shut." (N.T., vol. I, 26). According to Parlopiano, Cortese's invocation of the fifth amendment before the grand jury on January 3, 1980, came at Osticco's direction and Osticco reimbursed Parlopiano on each of the six or eight different times that Parlopiano gave money to Cortese.

Cortese was again subpoenaed to appear before a federal grand jury on March 7, 1980, and prior to that appearance Parlopiano and Osticco met. According to Parlopiano, he was told by Osticco that Cortese had to lie and watch what he said to avoid being prosecuted for perjury. Parlopiano relayed these admonitions to Cortese prior to his second appearance before the grand jury. Following his grand jury appearance Cortese met with Parlopiano and stated he had lied even though he had been granted immunity. At the same meeting, Cortese provided Parlopiano with a list of the questions he was asked before the grand jury. These questions were subsequently passed to Osticco.

■■■ Evidence in support of every allegation in the indictment was presented to the jury and Parlopiano was fully cross-examined by defense counsel. The court is aware that inconsistencies at times existed in Parlopiano's testimony and these have been painstakingly pointed out in detail by defense counsel. However, the government's questions to Parlopiano, even on direct examination, were geared toward giving Parlopiano the opportunity to explain any contradictions and inconsistencies, particularly as adduced from the tapes he made. In essence, this case turned around the jury assessment of Parlopiano's credibility and it is hornbook law that determinations on credibility are within the province of the fact finder. Rather than attempting to isolate portions of the record we have reviewed the testimony and recordings as a whole. Having accomplished this, we believe that the jury could conclude beyond a reasonable doubt that a conspiracy existed and that defendant, by his influence over Cortese, obstructed the proceedings of the federal grand jury. Defendant's position regarding sufficiency of the evidence is therefore denied.

## III. The Jury Charge

■■■ One of the issues raised by defendant arose in conjunction with the jury charge given with respect to 18 U.S.C. § 1503, the obstruction of justice statute. Defendant has argued that the court's references to whether Cortese remained a "potential" grand jury witness were improper. What defendant has overlooked, however, as the government has pointed out, is that defendant was charged under the omnibus clause of the statute, which criminalizes the activity of one who "corruptly ... influences, obstructs, or impedes, or endeavors to influence, obstruct, or impede the due administration of justice." Therefore, any reference by the court to Cortese's likelihood of being called as a grand jury witness actually worked to defendant Osticco's benefit. In reality, whether Cortese was still a witness was somewhat irrelevant as to whether Osticco

could be convicted under the omnibus clause of 18 U.S.C. § 1503. It appears that one of the problems in the case was that the word "witness" was eliminated from the first section of the statute on October 12, 1982, just one week before the indictment was returned against defendant Osticco. However, Cortese's potentiality as a witness remained an issue under the omnibus clause because one of the ways in which he could obstruct justice would be to go before the grand jury investigating the alleged jury tampering in the 1977 flood fraud trial and testify untruthfully about his knowledge thereof. A case particularly on point with regard to the present issue is *United States v. Friedland*, 660 F.2d 919 (3d Cir.1981), in which appellant raised an argument that an individual was not a "witness" for purposes of 18 U.S.C. § 1503. The *Friedland* court reasoned as follows:

> Rejecting a claim identical to that advanced by appellants, the court in *Falk v. United States*, 370 F.2d 472 (9th Cir. 1966), *cert. denied*, 387 U.S. 926, 87 S.Ct. 2044, 18 L.Ed.2d 982 (1967), stated:
>
>> [T]he defendant ... was not charged with influencing a 'witness' within the first provision of Section 1503. [He] was charged with endeavoring to influence, obstruct or impede the due administration of justice. The means of so doing was by attempting to corruptly influence prospective witnesses. It is clear that in the mind of the defendant, they were prospective witnesses. If he had thought otherwise, there would have been no reason to ask [them] to testify falsely. So, while the term 'witness' may be a word of art in an indictment under the first portion of Section 1503, the phrase 'prospective witnesses' is descriptive only of the intended status of [those whom the defendant attempted to influence] when the Indictment charges obstruction of justice.

*Id.* at 930–31. Even though the word "witness" has now been eliminated from the first part of the statute, obviously the perceived potentiality of an individual as a witness is relevant to charges under the omnibus clause. The testimony indicated that defendant Osticco believed Charles Cortese was a potential grand jury witness and/or that Cortese might voluntarily appear before the grand jury and divulge incriminating information about Osticco. Accordingly, the court's focus on the words "potential witness" or "likely witness," if erroneous at all, was, nevertheless, harmless.

## IV. Immunity and Witness Unavailability

■ Another issue raised by defendant deals with whether Cortese should have been granted immunity when he was called by the government at trial. At the time Cortese was called he invoked his fifth amendment privilege to remain silent and the court determined he was unavailable as a witness. As the government has pointed out, no conclusory decision from the Third Circuit has been forthcoming on whether the government must immunize a co-defendant who has invoked his fifth amendment privilege on the witness stand. We have, however, examined with interest the case of *United States v. Lang*, 589 F.2d 92 (2d Cir.1978) wherein the United States Court of Appeals for the Second Circuit stated, citing numerous cases, "[T]he law appears to be well settled that the power of the Executive Branch to grant immunity to a witness is discretionary and no obligation exists on the part of the United States Attorney to seek such immunity." *Id.* at 95–96. In *Lang* the court refused to espouse the granting of immunity to an individual who purportedly sold defendant counterfeit money, the possession of which was the basis of criminal charges against defendant. Although the court ultimately decided that the admission of a tape constituted reversible error [certain statements on it were not within the personal knowledge of the declarant], the court nevertheless held that the individual who had invoked his fifth amendment privilege prior to admission of the tape was an unavailable witness under Federal Rule of Evidence 804(a)(1) and that statements against penal

interest pursuant to Federal Rule of Evidence 804(b)(3) appeared on the tape.

We have carefully studied defendant's position that the government must, in certain circumstances, provide immunity. Defendant, however, appears to recognize that the instant case does not fall within such circumstances. No serious argument can be made that the government's decision not to seek immunity for Cortese resulted from a deliberate intention to frustrate the fact finding process or to prevent testimony that was essential to Osticco's defense. Accordingly, defendant's immunity argument must be rejected.

### V. Admissibility of Cortese Tapes

██ Both the government and defendant agree that the taped statements of Charles Cortese to Frank Parlopiano on July 25 and September 23, 1982, are admissible only if these statements fall under Federal Rule of Evidence 801(d)(2)(E) as made "in furtherance of the conspiracy" between Cortese and Osticco. Defendant's position is that because large parts of these tapes dealt with Cortese's recollection of past events and were evoked by Parlopiano in an attempt to gather evidence, the statements made were not in furtherance of the conspiracy. Defendant, however, has overlooked the fact that where there is a present concern with continuing a portrayal or impression about past misdeeds, authority exists that narrations of said past events may be in furtherance of a present conspiracy. The United States Court of Appeals for the District of Columbia Circuit considered the issue in *United States v. Haldeman*, 559 F.2d 31 (D.C.Cir.1976), the prosecution arising from the Watergate affair. The following language of the *Haldeman* court is persuasive:

As the threads of the cover-up began to unravel, it became increasingly important to review what had taken place in order to identify and shore up the loose ends. It became critical for the conspirators to try to ensure that any story they wished to present would not ring false and that any action they were consider-

ing would not backfire, a strategy whose success required total familiarity with the facts [footnote omitted].

In a conspiracy in which consideration of alternative strategies played so central a role, [footnote omitted] statements which narrate past events are not necessarily "mere narratives" in the usual sense of that phrase. Rather, they can constitute activity that is plainly and importantly "in furtherance of" a conspiracy, and thereby be admissible under the co-conspirator exception to the hearsay rule. *See, e.g., United States v. Annunziato*, 293 F.2d 373, 380 (2d Cir.), *cert. denied*, 368 U.S. 919, 82 S.Ct. 240, 7 L.Ed.2d 134 (1961); *Zamloch v. United States*, 193 F.2d 889, 890–91 (9th Cir.), *cert. denied*, 343 U.S. 934, 72 S.Ct. 770, 96 L.Ed. 1342 (1952).

*Id.* at 110–11. In the present case, although not of the massive proportions addressed in *Haldeman*, the heart of the conspiracy was aimed at covering up an incident of jury tampering by preventing a grand jury from receiving truthful information about the incident. The statements of Cortese in the tapes in question, therefore, were in furtherance of the conspiracy and were admissible under the co-conspirator exception to the hearsay rule. As the court noted in *United States v. Hamilton*, 689 F.2d 1262, 1270 (6th Cir.1982), statements need not actually further a conspiracy in order to satisfy the "in furtherance of the conspiracy" language of the Rule but rather "[i]t is enough that they be intended to promote conspiratorial objectives." Cortese's rehearsal of what had happened clearly was to enable him to fabricate a plausible story for the grand jury if he were to be called to testify.

██ Defendant has also raised a question with regard to the active role Frank Parlopiano played in eliciting these statements from Cortese. A recent case considering and rejecting such an argument is *United States v. Mitlo*, 714 F.2d 294 (3d Cir.1983). The district court had concluded that a statement should be suppressed if a declarant had been induced by government

trickery or deception to provide incriminating information. The United States Court of Appeals for the Third Circuit reversed and based its decision on the holding in *United States v. White*, 401 U.S. 745, 91 S.Ct. 1122, 28 L.Ed.2d 453 (1971), that consensual monitoring and recording by an informant are not constitutionally repugnant. Moreover, the *Mitlo* court cited *Lewis v. United States*, 385 U.S. 206, 209, 87 S.Ct. 424, 426, 17 L.Ed.2d 312 (1966), for the proposition that "in the detection of many types of crime, the Government is entitled to use decoys and to conceal the identity of its agents." In accordance with the foregoing discussion, we have concluded that the Cortese-Parlopiano tapes of July 25 and September 23, 1982, were properly admitted into evidence.

## VI. Suppression of Electronic Surveillance

The suppression issue was fully considered and discussed in our memorandum of July 13, 1983, 568 F.Supp. 119 at 121–128. The conclusions reached in that memorandum and order are attached hereto and are incorporated herein by reference. (See Exhibit A hereto).

## VII. Consecutive Sentences

At the sentencing hearing on December 16, 1983, the issue of the propriety of consecutive sentences was raised and argued. Both the government and defendant brought several cases to our attention and the government has filed a memorandum in support of consecutive rather than concurrent sentences in the instant case.

The problem before us is whether consecutive sentences are legally permissible when there is a conviction for obstruction of justice, 18 U.S.C. § 1503, and conspiracy to obstruct justice, 18 U.S.C. § 371. The government's position relies largely on *United States v. Dowling*, 633 F.2d 660 (3d Cir.), *cert. denied*, 449 U.S. 960, 101 S.Ct. 374, 66 L.Ed.2d 228 (1980). In the *Dowling* case the defendants were convicted of conspiracy under the same statute involved in the present matter and of two substantive offenses (armed robbery of a bank and

jeopardizing bank patrons and employees by using a handgun). Defendants were sentenced to concurrent twenty year terms on the substantive charges and a consecutive five year term on the conspiracy charge. In rejecting a challenge to the consecutive conspiracy sentence, the court stated, "it is well established that conspiracy to commit a substantive offense and the commission of the substantive offense itself are separate crimes and punishable as such." *Id.* at 668.

Defendant has relied on *United States v. Sampol*, 636 F.2d 621 (D.C.Cir.1980) and *Whalen v. United States*, 445 U.S. 684, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980). Initially we note that neither of these cases involved a conspiracy charge coupled with a substantive offense. *Sampol* involved making false statements and misprision of a felony, and *Whalen* involved rape and murder of the victim during the perpetration of the rape. The double jeopardy problem perceived in those cases revolved around the test formulated in *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1943) that "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not."

Although in both *Sampol* and *Whalen* double jeopardy problems were found, the holding of the United States Court of Appeals for the Third Circuit in *Dowling, supra*, and the *Blockburger* test as applied to the facts of the present case, compel a different conclusion. As the government points out, conspiracy to obstruct justice and obstruction of justice are separate offenses in that each requires proof of a fact exclusive of the other. The touchstone of a conspiracy is an agreement and the substantive offense would not require that any agreement be shown. The substantive offense would require showing that the planned endeavor actually went into effect. Under the circumstances, we

find that consecutive sentences were legally permissible for the crimes for which defendant Osticco was convicted.

VIII. Conclusion

For all of the foregoing reasons, we have found that defendant's post-trial motions are unpersuasive and must be denied. An accompanying order in accordance with these findings will be entered.