

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-29-2007

# USA v. Sobolewski

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-3014

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"USA v. Sobolewski" (2007). *2007 Decisions.* Paper 1410.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/1410

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 05-3014

UNITED STATES OF AMERICA

v.

BRET SOBOLEWSKI,
                                        Appellant

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
D.C. Criminal No. 03-cr-0830-1
(Honorable J. Curtis Joyner)

Submitted Pursuant to Third Circuit LAR 34.1(a)
March 1, 2007

Before:  SCIRICA, *Chief Judge*, McKEE and NOONAN[*], *Circuit Judges*.

(Filed: March 29, 2007)

OPINION OF THE COURT

[*]The Honorable John T. Noonan, Jr., United States Circuit Judge for the Ninth Judicial
Circuit, sitting by designation.

SCIRICA, *Chief Judge*.

Defendant Bret Sobolewski appeals his judgment of conviction. Sobolewski contends the District Court erred in denying his motion to suppress and his trial counsel provided ineffective assistance. We will affirm.

I.

In October 2003, FBI Agent Thomas Scanzano began investigating a Commerce Bank robbery in Philadelphia committed by a white male and a black male.[1] Later that month, Agent Scanzano learned of similar robberies of Commerce Banks in Pennsylvania. On October 29, 2003, Agent Scanzano obtained information about an anonymous phone call made to the Commerce Bank hotline, and corroborated by bank security, in which the caller stated he had information about one of the robberies and sought reward money. Using the bank's caller ID telephone function, Agent Scanzano traced the call to a hotel address in South Philadelphia and proceeded to the location to investigate. In the hotel's parking lot, Agent Scanzano saw a white Sebring convertible with a blue top and a license plate starting with "N" that matched the getaway car previously described by a witness. Agent Scanzano ran the license plate and determined the car had been stolen.

Agent Scanzano then interviewed the hotel manager, Charles Wattley, and discovered the Sebring had been driven by a black male and a white male who had been

---

[1] The following facts are based on Agent Scanzano's testimony.

2

guests at the hotel for about one month.  Wattley informed Agent Scanzano that the men were registered in room 231, which had been rented by Sobolewski, and provided Agent Scanzano with Sobolewski's photo identification card used to rent the room.  Earlier that day, Wattley had reminded Sobolewski about his past due rent and Sobolewski had told Wattley he would go to the bank that day to get the money.  Wattley identified the guests as the men in bank surveillance photographs from the October 15, 2003, Commerce Bank robbery, and without hesitation told Agent Scanzano the men were presently in their hotel room.

At that point, Agent Scanzano radioed FBI dispatch in Philadelphia and dispatch informed him there was an active outstanding warrant for Sobolewski's arrest.  After back-up arrived at the hotel, the agents knocked on room 231, announced their presence, and when nobody answered, forcibly entered the room.   The agents found Sobolewski and Benjamin Cottman in the room, and arrested both men.  Soon after, Cottman confessed that he and Sobolewski had committed the robberies and he had made the anonymous phone call to the Commerce Bank hotline.

Once inside the hotel room, Agent Scanzano saw in plain view a Philadelphia Phillies cap, a wig, a leather jacket and other clothing items similar to those in the surveillance photographs from the robberies, in addition to drug paraphernalia.  Soon thereafter, Agent Scanzano obtained a search warrant, executed the warrant, and seized evidence from the hotel room.  Additionally, Cottman had signed a consent form for agents to search the hotel room.  Unknown to the agents that entered room 231, the

3

outstanding arrest warrant, which FBI dispatch had discovered on the FBI's National Criminal Information Center (NCIC) database, was a Florida warrant that contained an instruction for "pickup anywhere in state of Florida only."

A federal grand jury returned an eight-count superseding indictment of Sololewski and Cottman[2] on July 29, 2004, charging them with conspiracy to commit bank robbery, in violation of 18 U.S.C. § 371 (count one), and bank robbery and aiding and abetting bank robbery, in violation of 18 U.S.C. §§ 2113(a) and 2 (counts two through eight). The District Court denied Sobolewski's motion to suppress evidence after a hearing. On October 22, 2004, a jury returned a guilty verdict against Sobolewski on all counts. On May 31, 2005, the District Court sentenced Sobolewski to 262 months' imprisonment, three years supervised release, restitution in the amount of $24,397, and a special assessment of $800. Sobolewski timely appealed.

## II.

We have jurisdiction under 28 U.S.C. § 1291. We review the District Court's denial of a motion to suppress for "clear error as to the underlying facts," but we exercise "plenary review as to its legality in light of the court's properly founded facts." *United States v. Givan*, 320 F.3d 452, 458 (3d Cir. 2003) (internal citations omitted); *see also United States v. Mitlo*, 714 F.2d 294, 296 (3d Cir. 1983).

## III.

---

[2] Cottman pled guilty to all counts on August 17, 2004.

Sobolewski challenges the District Court's denial of a motion to suppress evidence seized during the agents' search, contending the search stemmed from an illegal arrest not supported by probable cause. Sobolewski contends the agents did not have a proper arrest warrant because the NCIC print-out describing the outstanding Florida arrest warrant contained the language "pickup anywhere in state of Florida only," and accordingly, the evidence recovered must be suppressed as fruits of the poisonous tree.[3] *See Wong Sun v. United States*, 371 U.S. 471 (1963). At the suppression hearing, Sobolewski did not provide any evidence to support his interpretation that this language limited the warrant's jurisdiction to Florida only and was not valid to support an arrest in Pennsylvania. The government contends this language relates to extradition payment and does not impose a geographic restriction on the warrant.[4] We need not decide whether

_____

[3] Sobolewski agreed the FBI agent knew there was an active warrant outstanding for Sobolewski, and that at the time of the arrest, he did not know about any allegedly limiting language on the NCIC print-out. Even if the NCIC print-out did restrict the agent's authority to make an arrest in Pennsylvania, the good faith exception to the Fourth Amendment, *see United States v. Leon*, 468 U.S. 897 (1984), is not directly applicable. The good faith exception permits admission of evidence seized when officers were acting in good faith reliance on a warrant, even when later found to be unsupported by probable cause. *Id.* at 922. "Probable cause exists where the facts and circumstances . . . are sufficient to warrant a reasonable person to believe an offense had been committed." *See United States v. McGlory*, 968 F.2d 309, 342 (3d Cir. 1992). Here, Sobolewski does not contend the warrant lacked probable cause, but rather contends the geographic scope of the warrant was limited. Because we determine that the evidence is admissible under the independent source doctrine, we need not address whether the search was valid pursuant to *Leon*'s good faith exception.

[4] The court in *United States v. McDonald*, 606 F.2d 552, 553–54 (5th Cir.1979), noted "the cases uniformly recognize that NCIC printouts are reliable enough to form the basis

(continued...)

the agents acted under legal authority to enter the hotel room and arrest Sobolewski and

Cottman because we hold the evidence should be admitted under the independent source

doctrine.

Even assuming the agents initially entered Sobolewski's hotel room without a

valid arrest warrant, the evidence is still admissible under the independent source

doctrine. Under this doctrine, "evidence that was in fact discovered lawfully, and not as a

direct or indirect result of illegal activity, is admissible . . . ." *United States v. Herrold*,

962 F.2d 1131, 1140 (3d Cir. 1992). If a lawful warrant is obtained subsequent to the

initial illegal search or entry, then the evidence is admissible if the warrant is based upon

probable cause other than facts tainted by the initial illegal act and the "officers were not

prompted to obtain the warrant by what they observed during the initial entry." *Herrold*,

---

[4](...continued)
for the reasonable belief which is needed to establish probable cause for arrest." In *Case
v. Kitsap County*, 249 F.3d 921, 928–29 (9th Cir. 2000), the court found Washington
State officers could legally make an arrest inside the defendant's residence based on an
outstanding Oregon State warrant entered in the NCIC database. The court noted it was
unnecessary for officers to obtain a duplicate warrant. *Id.* In *United States v. Munoz*, 150
F.3d 401, 411–412 (5th Cir. 1998), the Court of Appeals for the Fifth Circuit found an
NCIC print-out showing an outstanding arrest for Munoz and evidence indicating Munoz
was at home sanctioned a United States Marshall to search Munoz's home. *But see State
v. Bradley*, 679 P.2d 635, 637 (Idaho 1983) (holding an out of state warrant "'has no
effect in this state except to provide the probable cause needed to make an arrest of the
defendant . . ., [which] is not sufficient under *Payton v. New York* . . . to justify a
warrantless entry into the defendants' premises in the absence of exigent circumstances
extant and therefore the officers had no authority to enter the premises.'") (quoting
*People v. Coto*, 611 P.2d 969 (Col. 1980)). Because the evidence is otherwise admissible
under the independent source doctrine, we do not have to address whether the agents had
authority based on the NCIC hit to enter the residence and arrest the defendants, even
absent the alleged restrictive language.

6

962 F.2d at 1141–42; *see also United States v. Johnson*, 690 F.2d 60, 63 (3d Cir. 1982). To apply the doctrine, we must determine, "without regard to information obtained during the original entry," whether the agents would have applied for the search warrant and whether there was sufficient probable cause for the warrant to be issued. *Herrold*, 962 F.2d at 1140.

Here, federal agents secured a search warrant from a United States Magistrate Judge before seizing any of the evidence previously discovered in plain view in the hotel room. Agent Scanzano's affidavit in support of his warrant application included information he had learned prior to entering the hotel room. The affidavit described the following: (1) Agent Scanzano traced an anonymous caller, who had called Commerce Bank about a string of robberies, to the Extended Stay Hotel in South Philadelphia; (2) on October 29, 2003, Agent Scanzano observed a car outside the hotel room matching the description of the getaway car; and (3) on October 29, 2003, the hotel manager identified Sobolewski and Cottman in bank surveillance photographs, matched them to the car, and advised Agent Scanzano that the men were presently in their rented room. The evidence obtained by Agent Scanzano prior to entering the hotel room, and included in his affidavit, is sufficient to establish probable cause to search, even if we excise tainted portions of his affidavit.[5] *See United States v. Burton*, 288 F.3d 91, 103 (3d. Cir. 2002)

---

[5] Paragraphs 3 and 4 provide sufficient evidence to support finding probable cause. Assuming the entry was illegal, we excised paragraphs 6 and 7 because they described information and evidence obtained subsequent to the agents' entry into the hotel room.

7

("To find probable cause to search, there needs to be a 'fair probability that contraband or evidence of a crime will be found in a particular place.'") (quoting *Illinois v. Gates*, 462 U.S. 213 (1983)); *Herrold*, 962 F.2d at 1137–38 ("[W]e need merely excise the references to the first entry and the fruits thereof in examining the affidavit upon which the warrant was based to determine if there was probable cause for the warrant."). Additionally, we find the agents would have applied for a search warrant to search Sobolewski's hotel room, independent of the original entry, because Agent Scanzano had already learned Sobolewki had been residing at this location for the duration of the bank robberies. *Id.* ("'If there is probable cause to believe that someone committed a crime, then the likelihood that that person's residence contains evidence of the crime increases.'") (quoting *United States v. Jones*, 994 F.2d 1051, 1055 (3d Cir. 1993)). Because of the overwhelming evidence contained in the affidavit to support the search warrant, we find the agents "were motivated by circumstances independent of their initial observations" in the hotel room to seek the search warrant, which was otherwise supported by probable cause. *Herrold*, 962 F.2d at 1143. Accordingly, the District Court did not err in refusing to suppress the evidence that resulted from the search.

We do not address Sobolewski's ineffective assistance of counsel claim on direct review. *United States v. Thornton*, 327 F.3d 268, 271–72 (3d Cir. 2003). Such claims are "best decided in the first instance in a collateral action." *Id.* at 272.

## IV.

We will affirm the judgment of conviction and sentence.